VICTOR E. KUNESH, Plaintiff and Appellant, v. THE CITY OF GREAT FALLS, James B. Austin, Mayor, et al., Defendants and Respondents.

No. 9500
Submitted September 11, 1957. Decided November 8, 1957
317 Pac. (2d) 297

Mr. Jerry J. O'Connell, Mr. David R. Domke, Great Falls, for appellant.

Mr. Ray F. Koby, Mr. John H. Kuenning, Mr. William M. Scott, Great Falls, for respondent.

Mr. Domke, Mr. Koby and Mr. Kuenning argued orally.

MR. JUSTICE CASTLES:

This is a taxpayers' suit opposing annexation of a city subdivision. In the lower court annexation was sustained. The protestants who filed this action through plaintiff and through him are here the appellant and will be referred to as plaintiff. The City of Great Falls and its officials, defendants below and respondents on appeal, will be called collectively the City. The appeal is from a judgment in favor of the City. The area is called the Fifteenth Addition.

We shall refer to the date through which timely protest could be received, set forth in the notice of resolution of intention to annex, as the protest date or, sometimes for greater clarity, as the final protest date. The date designated as the effective date of annexation will be called the annexation date. Calendar dates, names of protestants and details of annexation proceedings need not be mentioned. No principle involved depends solely on these details. And, except as they appear below, neither the facts of residence nor of freehold ownership need be discussed.

This appeal requires that we determine who is and who is not a *resident freeholder* within the meaning of R.C.M. 1947, section 11-403, subd. (1). This statute empowers municipal corporations to annex contiguous platted subdivisions. Subdivision (1) refers to cities of the first class, defined by R.C.M. 1947, section 11-201, as those having a minimum population of ten thousand. It provides that annexation will be effective on the date set by the city council, conditioned that proceedings have been regular and, providing further, that timely written protest by a majority of the resident freeholders within the area to be annexed has not been filed within twenty days of the first publication of notice by the city that resolution of annexation has been adopted by the city council.

Almost all facts are stipulated. It is agreed that the proceed-

ings by the city council have been regular and are effective unless we now decide that the protestants number less than a majority of the resident freeholders in the area, within the meaning of the controlling statute. As stated, the lower court found that less than the required majority had protested. Until otherwise shown preponderantly by the plaintiff we must presume that the lower court's proceedings are regular and contain no substantial error. R.C.M. 1947, section 93-3909; Gilna v. Barker, 78 Mont. 357, 254 Pac. 174.

The Great Falls city council found a total of fifty-two such inhabitants as of the final protest date. By stipulation during the hearing, this number was reduced to fifty. Forty-three agreed and seven in dispute. As to six, the facts were stipulated. Testimony was offered as to the origin of residence of the seventh.

Among the forty-three on whose status there was agreement and stipulation, twenty-three protested. Twenty did not. Therefore, to complete the total found by the trial court, it would seem that the status of seven must be determined on appeal. However, for reckoning a majority, this assumes that all of the seven in dispute, as well as the forty-three agreed, are resident freeholders. Such an assumption begs the question at issue. We must begin by determining the total number of freeholders residing within the addition and whether at least one more than half of these, i. e., a "majority," whatever the total number becomes, made timely written protest against the annexation.

None of the seven whose status is disputed filed any protest. *Prima facie,* therefore, we find twenty-three protestants, twenty agreed nonprotestants, and seven disputed nonprotestants; a total of fifty, with twenty-six required to constitute a majority. But this similarly assumes all of the fifty are resident freeholders.

Actually the status of any three out of the seven disputed nonprotestants will control for if any three are qualified to protest and did not, then along with the other twenty who it is agreed could have protested but did not, the total of twenty-

three nonprotestants equals the total of twenty-three protestants, there is no majority, and thus the status of the other four nonprotestants among the disputed seven can at most be only cumulative to the effect of the status of the three who will control.

These seven whose status and right to protest is disputed fall into four categories: two were resident freeholders at the final protest date set by the City, but although retaining their freehold in the Fifteenth Addition had removed their residence prior to the annexation date; two owned a freehold within the addition at both dates, but at neither date resided upon it, they at all times occupying other property within the addition to which they had not yet acquired legal title; two resided in the area, but did not acquire freehold ownership until the day after resolution of annexation was passed and the day before notice of proposal to annex, setting forth a date for final protest, was first published. Facts concerning these six were stipulated. The court found them all to be resident freeholders.

As to the seventh, testimony was offered by the defendant City. Whether the burden was on the City, or on the plaintiff as protestant need not be determined. It was conceded this man was a freeholder, beginning from about sixty days before resolution of annexation was adopted. The date his residence originated within the area for annexation was vigorously disputed, the City contending the evidence confirmed residence continuously from the date the freehold was acquired; the plaintiff arguing residence did not begin until about two months after the annexation date. With this man, intention to establish residence must control. The trial court concluded that the man's intention to reside on his freehold within the addition coincided with his moving to the freehold. We shall examine this evidence.

From the foregoing it is apparent that the problem now to be resolved is essentially one of definition, requiring answer to the following questions: (1) Under R.C.M. 1947, section 11-403, subd. (1), what is a resident freeholder? (2) Must the freeholder reside upon his freehold? (3) When does the freeholder become a resident? (4) Which controls, the protest date or the annexa-

tion date? (5) If the protest date, is plaintiff's appellate position a departure? We will deal with these questions in the order posed.

R.C.M. 1947, section 11-403, subd. (1), says of cities or towns of the first class: "* * * the city clerk * * * shall forthwith cause to be published * * * a notice * * * that such resolution [proposing annexation] has been * * * passed, and that for a period of twenty days after the first publication of such notice, such city clerk will receive *expressions* of approval or *disapproval,* in writing, * * * *from resident freeholders* of the territory proposed to be embraced therein. * * * and if, after considering the same, such council shall * * * adopt a resolution * * * [of annexation] the boundaries * * * shall be extended * * * to embrace * * * such platted tracts * * * *the time when the same shall go into effect to be fixed by such resolution;* provided, that such resolution *shall not be adopted by* such council *if disapproved, in writing, by a majority of the resident freeholders* of the territory proposed to be embraced." Emphasis supplied.

Residence has been defined as the place where a man makes his home. The rules for determining residence are given in R.C.M. 1947, section 83-303, which states that there can be only one residence, that it cannot be lost until another is gained, that it can be changed only by union of act and intent, that, presumptively, the residence of the husband is the residence of the wife, and that residence "* * * is the place where one remains when not called elsewhere for labor or other special or temporary purposes; and to which he [the resident] returns in seasons of repose." However, these are guides for interpretation, they are not a definition. This is unavoidable, for as Mr. Justice Holloway observed in Carwile v. Jones, 38 Mont. 590, at page 602, 101 Pac. 153, at page 158, "it is as easy to understand the meaning of 'residence' as it is to understand the meaning of some of the terms used in the rules for determining the meaning of 'residence.' Every case must stand upon its own facts, and a decision in any event must, of necessity, be the result of a

more or less arbitrary application of the rules of law to the facts presented.''

Except as concerns the two protestants who removed their residence from the Fifteenth Addition between the protest date and the proposed date for annexation, whether residence and domicile must coincide to qualify a protestant as a resident freeholder need not now be decided, nor as to them if the protest date controls because they changed neither their residence nor their domicile until after the protest date had passed.

Freeholds are defined by R.C.M. 1947, section 67-506, as ''estates of inheritance and for life.'' A freeholder is ''one who holds an estate in real property, either of inheritance or for life.'' Warren v. Chouteau County, 82 Mont. 115, 125, 265 Pac. 676, 680. The existence of freehold ownership may be determined by search of county ownership records, although not necessarily by search of the county assessment rolls only. State ex rel. Wilson v. Musburger, 114 Mont. 175, 133 Pac. (2d) 586.

''While the word 'residence' has been involved in many controversies * * * it will be found that it is not the word itself that has been difficult of understanding. It has been in the construction of language expressive of the effect of residence, and of the rights arising therefrom and based on the fact of residence. In each such case the word becomes a part of a concept larger than itself, such as residence necessary to the right to vote, residence in establishing a domicile, residence necessary to citizenship, etc.'' In re Takahashi's Estate, 113 Mont. 490, 497, 129 Pac. (2d) 217, 221.

Thus, under R.C.M. 1947, section 11-403, subd. (1), the first question becomes not what is a resident freeholder, but rather who is a resident freeholder qualified to protest a city's annexation of a subdivision? The question has not been before decided in this state.

The earliest appellate opinion we have found squarely defining the term is the case of Damp v. Town of Dane, 29 Wis. 419, decided 1872. In that case, the county supervisors had ordered what today would be called a farm-to-market road laid out over

plaintiff's land and had awarded him $52 damages, charging the award to the defendant Town of Dane as the law required. Plaintiff protested and was allowed $400 by a justice court jury. Thereupon the supervisors vacated the order laying out the road. When the town refused to audit plaintiff's claim based on the jury award, plaintiff sued. He was sustained in the circuit court.

Sixteen resident freeholders had petitioned for the road. Under the statute, fifteen were required. On appeal, two were disqualified as being residents but not freeholders. In reaching its conclusion the Wisconsin court said at page 427: "But some controversy has arisen as to what constitutes a 'resident freeholder' * * * Obviously, a person within that description must be, 1st. A resident of that town; and 2d. He must own a freehold interest in lands *situated therein.* * * * the principle of the law and its evident intent is, that the highway shall not be laid out without the advice and sanction of the requisite number of residents of the proper town, who, by reason of their property interests in such town, and their liability to be taxed to pay the resulting damages, would not be likely to petition for the highway unless it was needed by the public. The legislature has seen fit to require that such property interest must be freehold estate; and unless it is held that such estate must be in lands situated within the town where the petitioners reside, an important object sought to be attained by the statute would be defeated. * * * a person is not a qualified petitioner under the law unless he holds a freeehold interest in lands situated in the town wherein he resides."

Considering a comparable question, the Nebraska Supreme Court in Campbell v. Moran, 71 Neb. 615, 99 N.W. 498, 499, has ruled: "The fact that a qualified petitioner is required to be a resident freeholder is of itself evidence that, in the regulation of the [liquor] traffic, the legislature intended those only should be permitted to act who had attained the status, standing, and dignity attributable to those who are owners of property of the stable character of real estate. * * * What is required is

title to the property, and not simply a contingent or an expectant estate * * *.'' And in a later case, Cohn v Welliver, 84 Neb. 230, 121 N.W. 107, 108, the same court said: ''It was evidently the purpose of the Legislature * * * to place the matter * * * primarily in the hands of those having their own homes and interests within the municipality or ward where the license was to be sought; hence the use of the words 'resident freeeholders' which must be construed to mean those living within the subdivision holding title to real estate''

The Indiana Supreme Court said in interpreting a statute providing for remonstrance against annexation by 75 percent of the resident freeholders of the territory sought to be annexed, and permittting the annexation despite the remonstrance if the circuit court of the county should deem the annexation necessary for the prosperity of the city and the safety of the inhabitants that ''in order to insure permanency of interest in the inhabitants that are given a voice on the question, [of annexation] they are required to be freeholders. The convenience, safety, and protection of a resident landowner in the territory may be, and very likely is, different from that of a nonresident landowner * * * *'' Taggart v. Claypool, 145 Ind. 590, 44 N.E. 18, 19, 32 L.R.A. 586. See, also, People ex rel. Ottman, v. Hynds, 30 N.Y. 470; McCormick v. Board of Commissioners of Johnson County, 68 Ind. 214; Kirkland v. Board of Public Works, 142 Ind. 123, 41 N.E. 374; Pittsburgh, C., C. & St. L. Ry. Co. v. City of Indianapolis, 147 Ind. 292, 46 N.E. 641; and State ex rel. Adams v. Mayor & Common Council of Kokomo, 108 Ind. 74, 8 N.E. 718.

It would appear then that a resident freeholder qualified to protest annexation may be defined as one who is a resident within the area to be annexed, holding a present legal title to a freehold estate in real property located within the area to be annexed. The freehold can be confirmed by the records. The residence is a matter of bona fides. If such a definition be literal, then the fault must lie not with law but with the English language, for language can be expressed only in words.

Must the resident freeholder reside upon his freehold? The ▉ plaintiff so insists. We find no such limitation urged or considered in any case or suggested in any text. Nor can we see any reason to justify such a limitation so long as benefits and obligations of residence and rights of freehold ownership are the same to all resident freeholders throughout the area. No showing is here made that by the annexation of the Fifteenth Addition into the City of Great Falls either these rights or these duties will become otherwise. See McCormick v. Board of Commissioners of Johnson County, supra.

When does the freeholder become a resident? Under R.C.M. ▉ 1947, section 83-303, upon the union of act and intent. Obviously this becomes a question of evidence. The record shows that the seventh nonprotestant, the one whose residence was most disputed, had bought a freehold and moved his family onto it at least sixty days before the protest date. Freehold ownership was admitted. They lived there first in a trailer, then in a basement they had built on the freehold. While living in the basement, they built a home on another freehold owned by them, two doors away from the basement but within the Addition. When this was ready, they moved into it. They received their mail at this residence They sent their children to the local school. They did not change their prior voting residence, but no election occurred. None of this was disputed. The wife testified:

"Q. Why did you sell your home in Highwood? A. Well, we just decided we were getting too up in years to repair it and fix it and go to all that work. It was so demolished we didn't want to put any more work on it, and we decided that we would make our home in Great Falls."

From this evidence the district court found this man to be a resident of the area to be annexed. With this we agree.

"If the intention to establish a permanent residence be ascertained, the recency of the establishment, though it may have been for a day only, is immaterial." 1 Kent's Commentaries, Lecture IV, (14th ed.) page 104.

Which controls, the protest date or the annexation date?

■ Again we have found no suggestion in any reported case examined that such later date should control. We are impressed with the City's argument that the final date for protest as set forth in the notice that resolution of annexation has been passed is the only logical date to end the right of protest. It is definite, it is fixed and it is unalterable. As the present case illustrates, and as was implied by the Indiana Supreme Court in Taggart v. Claypool, supra, the rights of the protestants should not be subject to the convenience of the city council nor should the rights of the nonprotestants and of the City be vulnerable to the legal manoeuvres of the protestants.

Plaintiff's citations of Sharkey v. City of Butte, 52 Mont. 16, 155 Pac. 266, and Dietrich v. City of Deer Lodge, 124 Mont. 8, 218 Pac. (2d) 708, are not in point. There is no showing here of any irregularity in the city's proceedings; the actions are clearly within the power of a municipal corporation under the annexation statute; the lower court is not shown to be in error; and we entertain no doubt that the seven disputed nonprotesting resident freeholders are within the purview of that state.

As stated, no questions are raised as to the regularity of the annexation proceedings nor as to the bona fides of the City and the protestants. Likewise, the constitutionality of R.C.M. 1947, section 11-403, is not questioned. We intend no precedent should such questions be raised in some later litigation. We decide the appeal before us.

For the reasons stated the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY, ANGSTMAN and ADAIR, concur.