STATE ex rel. HAROLD KONEN and ANGELA KONEN, on
BEHALF OF THEMSELVES AND ALL OTHER PERSONS SIMILARLY
SITUATED, RELATORS AND RESPONDENTS, v. THE CITY OF
BUTTE, MONTANA, a MUNICIPAL CORPORATION, ET AL.,
RESPONDENTS AND APPELLANTS.

No. 10644

Submitted June 15, 1964. Decided August 13, 1964.

394 P.2d 753

96

William N. Geagan (argued), Maurice Hennessey, Butte, for appellants.

Thomas F. Kiely (argued), Thomas Joyce (argued), Butte, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by the City of Butte from a judgment of the district court issuing a peremptory writ of mandamus requiring the City to find that a majority of the resident freeholders had protested the annexation proceeding and to cease and desist from enforcing the resolution of annexation and to cease and desist from exercising any jurisdiction over the annexed area.

The protestants who filed this action through the relators are respondents and will be referred to as protestants. The City of Butte and its officials, respondents below and appellants here, will be called collectively the City. The area in question is the Smith and Shewe Addition.

Certain facts in the case are undisputed: (1) That the City of Butte is a city of the first class; (2) That the area in question is platted and the plat filed in the office of the county

clerk and recorder; (3) That the land in question is contiguous to the City of Butte.

On August 22, 1962, the Butte City Council passed a resolution stating that it was in the best interest of the City and the inhabitants of the Smith and Shewe Addition for that area to be included within the corporate limits of the City of Butte.

In accordance with the resolution, the city clerk caused notice to be published stating that the resolution proposing annexation had been passed, and that the city clerk would receive written expression of approval or disapproval, from the resident freeholders of the territory proposed to be embraced, for a period of twenty days after the first publication of the notice. Within the required time at least 249 written expressions of disapproval were filed with the city clerk.

On September 19, 1962, the city clerk presented the city council with the written protests and the council directed the city attorney and city engineer to study the protests and make a report to the council on October 3, 1962.

At the meeting of October 3, counsel representing the protestants appeared before the city council meeting, and sought a determination, by a committee of the city council, to be made of the protests, but was refused. At that time the city attorney reported that protests were insufficient. However, no showing of how this determination was made is set out in the record. Based on this recommendation, the city council proceeded to pass a resolution annexing the area in question.

After passing the annexation resolution, the city council then offered to meet with the protestants, but the offer was declined because by then the annexation was accomplished unless stopped by court action.

Counsel for the protestants hired an abstracter to determine the total number of freeholds in the area in question. Using this information and from investigation of their own, counsel for protestants ascertained the total number of resident free-

holders and that a majority of them had validly protested the proposed annexation.

On October 30, 1962, the protestants filed a petition in the district court seeking an alternative writ of mandamus which was granted. Upon trial of the matter the district court found that more than a majority of the resident freeholders had protested the annexation within the time required by law; that no determination had been made by the city council or any city official as to the total number of freeholders, the number of resident freeholders, or the number of resident freeholders considered to have validly protested the annexation proceeding; that the action of the city council in purporting to find that the protests were legally insufficient was arbitrary and capricious. Upon these grounds the court issued a peremptory writ of mandamus. From this holding the City appeals.

Although the appellant City sets out ten specifications of error, they devolve into three questions: (1) Who has the burden of determining if a majority of the resident freeholders have protested the proposed annexation? (2) Did a majority of the resident freeholders validly protest the proposed annexation? (3) Does mandamus lie to control the action of the city council?

In answer to the first question, the burden is on the City. The annexation statute, R.C.M.1947, § 11-403, subd. (1), empowers municipal corporations to annex contiguous platted subdivisions. Subdivision (1) of the statute refers to cities of the first class and provides that annexation will be effective on the date set by the city council, conditioned that proceedings have been regular and, providing further, that less than a majority of the resident freeholders have submitted written protests.

A careful reading of this subdivision shows that the statute does not answer all questions that may arise thereunder, and this court has been required to supply some of the answers under the general outline provided by the statute. Sharkey

v. City of Butte, 52 Mont. 16, 155 P. 266; Kunesh v. City of Great Falls, 132 Mont. 285, 317 P.2d 297; Penland v. City of Missoula, 132 Mont. 591, 318 P.2d 1089.

R.C.M.1947, § 11-403, subd. (1), as it pertains to this case says: "* * * the city clerk * * * shall forthwith cause to be published * * * a notice * * * that such resolution [proposing annexation] has been * * * passed, and that for a period of twenty days after the first publication of such notice, such city clerk will receive *expressions* of approval or *disapproval,* in writing * * * from *resident freeholders* of the territory proposed to be embraced therein. The clerk shall, at the next regular meeting of the city council * * * lay before the same all communications in writing by him so received *for its consideration,* and if, *after considering the same,* such council shall * * * adopt a resolution * * * [of annexation] the time when the same shall go into effect to be fixed by such resolution; provided * * * *that such resolution shall not be adopted by such council if disapproved, in writing, by a majority of the resident freeholders if any, of the territory proposed to be embraced. * * *"* Emphasis supplied.

In the plain language of the statute if less than a majority of the resident freeholders protest, the City may, in its discretion, annex the area in question. However, if a majority of the resident freeholders do protest, the City is without jurisdiction to proceed with the annexation. People ex rel. Mosk v. City of Santa Barbara, 192 Cal.App.2d 342, 13 Cal. Rptr. 423; Morin v. City Council of City of San Jose, 109 Cal. App.2d 268, 240 P.2d 688. The filing of sufficient protests deprives the city council of authority to do anything except to sustain the protests and terminate the proceedings. American Distilling Co. v. City Council of City of Sausalito, 34 Cal.2d 660, 213 P.2d 704, 18 A.L.R.2d 1247.

The City contended that since the statute was silent as to the burden of proof that the burden must rest on the protestants. The City did not cite any authority on this point. To follow

this rationale would require each protestant to appear before the council and prove that he was a resident and freeholder in the area in question and that it was his signature on the protest

A similar situation arose in the California case of Foth v. City of Long Beach, 125 Cal.App.2d 520, 529, 270 P.2d 868. In that case written protests were filed by 1,228 property owners and 1,167 constituted a majority. The Long Beach City Council referred the protests to the city engineer and city manager for checking and verification. The California annexation statute provides for a "hearing" before the council on the written protests. At the hearing the city engineer reported that 99 protests were invalid. The city attorney then advised the council that these 99 owners of unrecorded property interests could not protest. The council allowed the protestants two hours and forty-five minutes to examine the "rejected" protests. As to this action by the city council the California District Court of Appeals said: "* * * The city attorney erroneously advised the council that a nonrecord owner could not protest. As the trial judge said, it would be absurd to hold that 1,228 protestants are required to be present in the council chamber on the date set for hearing protests. The protests were valid on their face; and until they were questioned the protestants had no means of knowing whether any of them would be questioned, and if questioned, the ground thereof."

The appellant's position is even more untenable under R.C.M. 1947, § 11-403, subd. (1), because it does not call for a hearing on the protests. The statute does not provide for any further action by the protestants after the presentation of the protest to the city clerk. However, the statute does require the city council to consider the protests before proceeding with the annexation.

The record in this case shows that the city council asked the city attorney and city engineer to study the protests and make a report to the council. The study could have been for only one

purpose, to determine if a majority of the resident freeholders from the area in question had protested.

In a recent Montana case controlled by this statute, the Great Falls City Council made the necessary determination as to the number of freeholders. Kunesh v. City of Great Falls, 132 Mont. 285, 287, 317 P.2d 297, 298.

In accord with this view that the City has the burden of determining if a majority of the resident freeholders have protested is a statement from 62 C.J.S. Municipal Corporations § 61, p. 168: "* * * In annexation proceedings the board, court, or other body to whom the petition is properly presented has the *right and duty* to determine whether it is signed by the required percentage of persons qualified to sign. * * *" Emphasis supplied.

██ Now we turn to the question of whether a majority of the resident freeholders validly protested the proposed annexation.

The City contends that the district court finding that protests were sufficient is unsupported and contrary to the evidence presented. However, at the trial, the City did not present any evidence either to show the protests insufficient or to rebut the protestants' evidence.

We agree with the district court that a protest regular on its face would be presumed valid unless its validity was questioned. The City has not presented any evidence that these signatures are legally insufficient. The City did not explain which signatures it had rejected nor which signatures it had accepted. There is no showing from the record that the City or any of its officials even determined the total number of freeholders in the area.

This court in Laughnan v. Sorenson, 139 Mont. 531, 535, 366 P.2d 433, 435, said: "This court cannot presume that the trial court committed error. Appellant must assume the burden of showing that error was in fact committed, and upon this record, as presented, he has failed."

■■ The third question raised by this appeal is whether mandamus will lie to compel the city council to terminate the annexation proceeding.

Mandamus is an extraordinary remedy and will not issue if there is a plain, speedy and adequate remedy in the ordinary course of law. McConnell v. Dist. Ct., 120 Mont. 253, 182 P.2d 846; Moran v. Board of County Commissioners, 139 Mont. 351, 363 P.2d 1073.

This court is of the opinion that the district court was correct in its conclusion that the protestants did not have a plain, speedy and adequate remedy at law.

The City contends that protestants had a plain, speedy and adequate remedy through the use of the Uniform Declaratory Judgments Act, R.C.M.1947, §§ 93-8901 to 93-8916.

We cannot agree with this contention because it has been pointed out that mandamus against a public officer or body is a more adequate remedy than a declaratory judgment, because mandamus commands performance, while a declaratory judgment simply pronounces the duty to be performed. Berkeley Unified School District v. City of Berkeley, 141 Cal.App.2d 841, 297 P.2d 710.

Here, the petitioners wanted to stop the annexation process before it was completed. A declaratory judgment would not have accomplished this but mandamus would.

According to R.C.M.1947, § 11-1106, an ordinance which is not a general appropriation measure or an emergency measure is not effective until thirty days after its passage. Here the suit was brought twenty-six days after the resolution was passed to prevent it from becoming final.

Under very similar facts the California Supreme Court said: "Quo warranto has been invoked or designated as the appropriate remedy in cases where annexation proceedings have been completed and the municipal corporation or district is exercising control over the territory. [citing cases.] But where the annexation proceedings were not completed at the time relief

was sought the courts have entertained petitions in mandate or certiorari. [citing cases.] It is thus apparent that when the remedy by quo warranto has not matured, it is not deemed plain, speedy or adequate for the purpose of controlling the performance of a statutory duty. And since mandate appeared to be the only effective remedy available to the petitioner by which performance of the legal duty could be procured, the trial court did not abuse its discretion in granting the writ." American Distilling Company v. City Council of City of Sausalito, 34 Cal.2d 660, 667, 213 P.2d 704, 708, 18 A.L.R.2d 1247.

The City of Butte did not raise the question of quo warranto being the proper remedy therefore they must have agreed that the ordinance was not yet effective.

The position of a citizen who objects to his property being annexed is well-stated in Sharkey v. City of Butte, 52 Mont. 16, 155 P. 266, where this court said: "We are not aware of any statutory remedy conferred upon the resident freeholder who objects to having his property included within the city's limits, and until the time arrives for final action by the city council he is not in a position to complain, for he cannot know what action the city will take until it has examined and considered the expressions of approval or disapproval by the resident freeholders of the territory affected, and section 3214 [Revised Codes 1907, now R.C.M.1947, § 11-403] above contemplates that at the same meeting at which such expressions are submitted for the council's consideration, final action shall be taken. So that unless a suit in equity to have the proceeding annulled and the city restrained from exercising authority over the proposed extension, is available, the objecting freeholder is remediless. * * *"

When the city council considered the protests it should have found that they were sufficient and at that point terminated the annexation proceeding. Since the council did not terminate the annexation, and took arbitrary action, mandamus will lie to compel them to terminate the process.

Both at the trial and on appeal the protestants contended that section 11-403, subd. (1), was unconstitutional, but since this appeal can be decided without answering that question it will not be considered at this time.

The judgment of the District Court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, DOYLE and ADAIR concur.