No. 12294

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

STATE OF MONTANA, ex rel; CHARLES STEPHENS
and NOLA M. STEPHENS, his wife; and FORREST
G. HIGGINS and MILDRED L. HIGGINS, his wife,

Relators and Appellants,

-vs-

THE CITY OF HAMILTON, MONTANA, A Municipal
Corporation,

Respondent and Respondent.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellants:

Boone, Karlberg and Haddon, Missoula, Montana.
Thomas H. Boone argued, Missoula, Montana.

For Respondent:

Laurence Petersen argued, Billings, Montana.

---

Submitted: October 17, 1972

Decided: DEC 1 1972

Filed: DEC 1 1972

*Thomas J. Kearney*

Clerk

Hon. Peter G. Meloy, District Judge, sitting in place of Mr. Justice Frank I. Haswell, delivered the Opinion of the Court.

This is an appeal from a judgment entered by the district court of Ravalli County. Involved is an ordinance of the City of Hamilton to extend its boundaries to include certain contiguous real property. The issue presented is whether or not the district court erred in concluding that the sellers and not the purchasers under contract for deed were "freeholders" and concluding that a majority of the freeholders failed to protest the annexation.

Charles A. Stephens and Nola M. Stephens, his wife, and Forrest G. Higgins and Mildred L. Higgins, his wife, the appellants, brought an action seeking a writ of mandamus or other appropriate writ against the City of Hamilton, Montana, a municipal corporation, to set aside Ordinance No. 317 extending the boundaries of the City of Hamilton, Montana, to include the real property set forth in exhibit "A" to the petition for alternative writ of mandamus. The appellants, along with others who are owners of real property within the area sought to be annexed, protested the annexation by the City of Hamilton.

The City of Hamilton is a city of the third class and is a municipal corporation organized and existing under the laws of the State of Montana. Proceeding under section 11-403(2) R.C.M. 1947, Hamilton city council passed Resolution No. 316 which was a resolution of intention to extend the corporate boundaries and notice thereof was given. Protests were filed with the city clerk of Hamilton, Montana.

On January 10, 1972, the Hamilton city council adopted Ordinance No. 317 extending the corporate boundaries to include the real property in question. This ordinance was to be effective 30 days after its passage. This action was commenced on February 9, 1972, at which time an alternative writ of mandamus was issued by the court.

As of the final protest date, there were 670 individuals with recorded deeds of whom 315 registered their protests in

writing with the clerk of the Hamilton city council. Of the 670 there were 12 individual contract sellers (none protested) not owning other property in the area who were selling to individuals who have recorded notices of purchaser's interest with the Ravalli County clerk and recorder. Also of the 670 were 40 individual contract sellers (none protested) not owning other real property in the area whose contracts were evidenced by a notation in the "in-care-of" files of the Ravalli county assessor. Not included in the 670 or in the protesters were 85 individuals (44 protested) who were contract purchasers of real property in the area, whose interest was evidenced by either recorded notices of purchaser's interest or in the "in-care-of" files of the Ravalli county assessor. The Hamilton city council determined that there were insufficient protests by freeholders within the area sought to be annexed, and passed the ordinance annexing the area.

The City of Hamilton has agreed, if relevant, that the "in-care-of" file were contract purchasers of real property within the area.

The parties in presentation of the issue to the district court stipulated the following conditional conclusions:

> "IT IS FURTHER AGREED that if the court determines:
>
> "(1.)   That a freeholder is only the contract seller, then a majority of the freeholders failed to protest the annexation and the Relators' suit should be dismissed with prejudice.
>
> "(2.)   That a freeholder is only the contract buyer, then a majority of the freeholders did protest the annexation and the City should revoke Ordinance No. 317.
>
> "(3.)   That a freeholder means both the contract seller and the contract buyer, then a majority of the freeholders failed to protest the annexation and the Relators' suit should be dismissed with prejudice.

- 3 -

"(4.) That freeholder means contract sellers
other than those selling to individuals who
have filed or recorded Notices of Purchasers'
Interest at the Ravalli County Clerk and
Recorder's Office, and such individuals who have
filed or recorded such notices, then a majority
of the freeholders failed to protest the
annexation, and the Relators' suit should be
dismissed with prejudice."

It is incumbent upon the Court to determine the intent of the legislature in the use of the language of section 11-403(2). In sub-section (1) the words used are "resident freeholders". In sub-section (2) the legislature curiously used the words "property holders" when directing notice to be given but used the word "freeholders" as to those entitled to protest.

The appellants contend that in a contract for deed situation it is only the purchaser who is the "freeholder". The respondent contends that the seller is the "freeholder".

The case of First State Bank v. United States, 92 F.2d 132, 134-135, (9th Cir. 1937), we think clearly states the legislative intent as to the character of a freeholder as follows:

"Clearly, between these two parties, it is the
vendee who is closest to the land; who is the more
interested in its preservation; who is better able
to take the safeguarding steps contemplated by
the statute."

This Court in Kunesh v. City of Gt. Falls, 132 Mont. 285, 291, 317 P.2d 297, has reiterated the reason for the legislative intent in the approval of the following language:

"' * * * the legislature intended those only
should be permitted to act who had attained the
status, standing, and dignity attributable to
those who are owners of property of the stable
character of real estate * * * It was evidently
the purpose of the Legislature * * * to place
the matter * * * primarily in the hands of those
having their own homes and interests within the
municipality or ward where the license was to be
sought; hence the use of the words "resident
freeholders" which must be construed to mean
those living within the subdivision holding
title to real estate.'"

In the situation of a contract for deed it is the purchaser who usually may be characterized as the party with the real interest of owning and residing permanently upon the premises. The purchasers would be the ones who would have, as was said

in Kunesh, the ones "having their own homes and interests within the municipality" and thus have the interest in subjecting the property to the regulatory authority.

In Kunesh, at p. 290, this Court reiterated the statutory definition (section 67-506, R.C.M. 1947) of freeholder as "'one who holds an estate in real property, either of inheritance or for life.'"

We are here concerned with the situation of a so-called "contract for deed". This Court in Kern v. Robertson, 92 Mont. 283, 12 P.2d 565, concerned itself with the status of the vendor and the vendee in the instance of a contract for deed. This Court characterized the vendee to be the "real" or "beneficial" owner. There the Court said:

> "The authorities are in accord that an enforce-
> able contract for the purchase and sale of real
> property passes to the purchaser the equitable
> and beneficial ownership thereof, leaving only
> the naked legal title in the seller, as trustee
> for the purchaser, and as security for the un-
> paid purchase price. If the purchaser dies
> while the contract is in force and effect,
> his interest passes to his heirs as real prop-
> erty. If the seller dies while the contract
> is in force and effect, his interest passes to
> his personal representative as personal property,
> and not to his heirs."

The Court then quoted from 1 Pomeroy's Equity Jurisprudence, 4th Ed. § 105, pp. 117, 118, as follows:

> "In short, equity regards the two contracting
> parties as having changed positions, and the
> original estate of each as having been 'converted',
> that of the vendee from personal into real prop-
> erty, and that of the vendor from real into
> personal property."

The case of State v. Kistner, 132 Mont. 437, 318 P.2d 223, follows the same equitable conversion principle as applied to inheritance tax.

The above cases are cited by the respondent to support the contention that section 11-403(2), the annexation statute here involved, when it refers to "freeholders" means "legal title holders".

This position presents an anomalous situation when reference is made to the position taken by this Court in _Kunesh_ describing the legislative intent in enacting section 11-403(2).

It would appear that the language used in _Kunesh_ as to legislative intent would be consistent with the approved equitable conversion doctrine, i.e. the purchaser in effect being the "real" owner and having the statutorily defined inheritable interest.

In _Kunesh_ this Court was concerned only with the word "resident" in the term "resident freeholders". Likewise in the case of Brodie v. City of Missoula, 155 Mont. 185, 468 P.2d 778, this Court was concerned only with residence.

It will be noted that this Court, in _Kunesh_, at p. 292, stated as follows:

> "It would appear then that a resident freeholder
> qualified to protest annexation may be defined
> as one who is a resident within the area to be
> annexed, holding a present legal title to a free-
> hold estate in real property * * *."

The respondent relies on the _Kunesh_ and _Brodie_ cases. The respondent contends that since this Court used the words "present legal title to a freehold" that this Court meant "naked legal title" as occurs in a contract for deed situation. This Court was not there concerned with nor did it hear arguments upon a case involving a contract for deed. The intendment of the words in those cases is to the effect that there must be "title" to a freehold and it must be lawful. Had this Court have held as the respondent contends the result would have been obiter dictum.

The respondent further states that examination of the records of the county, in order to determine the freeholders, extends only to recorded deeds. This, respondent states, leads

- 6 -

to the conclusion " * * * that to be a freeholder, one must possess a recorded deed". Such is not the law under the Montana decisions in Swaim v. Redeen, 101 Mont. 521, 55 P.2d 1 and State ex rel. Wilson v. Musburger, 114 Mont. 175, 178-179, 133 P.2d 586. These cases indicate that the obligation of examination of the county records extends to all of the records in the county including the clerk of the district court's records, the records of the clerk and recorder and the records of the county assessor's office.

We therefore hold that the term "freeholder" as used in section 11-403(2), R.C.M. 1947, means the purchaser and not the seller under a contract for deed. To hold otherwise would contradict our prior interpretations of both the legislative intent of this section and the statutory definition of "freeholder". It would also unjustly and unreasonably deprive the right of protest from those with substantial present and future interests in real property in favor of those retaining bare legal title.

The district court erred in finding that a majority of freeholders failed to protest the annexation.

The judgment is reversed and the cause is remanded with directions for further proceedings not inconsistent with this opinion.

_____
Hon. Peter G. Meloy, District Judge, sitting in place of Mr. Justice Frank I. Haswell.

We concur:

_____
Chief Justice

_____

_____

_____
Associate Justices

- 7 -