No. 12312

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

_____

KENNETH R. BURRITT, d/b/a BURRITT ANIMAL
HOSPITAL, E & L REAL ESTATE COMPANY, INC.,
a Montana corporation, BUTTE PLAZA, INC.,
a corporation, and ROMNEY INTERNATIONAL
HOTEL, INC., a Delaware Corporation,

                    Plaintiffs and Appellants,

        -vs-

CITY OF BUTTE, A Municipal corporation,

                    Defendant and Respondent.
-----------
SAFEWAY STORES, INC., et al,

                    Plaintiffs and Appellants,

        -vs-

CITY OF BUTTE, A Municipal corporation,

                    Defendant and Respondent.

_____

Appeal from:  District Court of the Second Judicial District,
              Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellants:

        Poore, McKenzie and Roth, Butte, Montana
        Urban L. Roth argued, Butte, Montana

    For Respondents:

        John A. Alexander argued, and C. L. Harrington appeared,
        Butte, Montana

_____

                            Submitted:  February 28, 1973

                            Decided: MAR 2 6 1973

Filed: MAR 2 6 1973

_Thomas J. Kearney_
                            Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal by four property owners and two lessees of part of their property from a judgment of the district court of Silver Bow County, the Hon. Nat Allen, district judge presiding, validating the annexation of their property into the city limits of Butte, Montana. From a consolidated judgment in two cases denying their applications for a writ of prohibition against the City of Butte to prevent annexation, the property owners and their lessees appeal.

For simplicity of identification, we shall refer to plaintiffs as Burritt, Romney Hotels, E & L Real Estate, Butte Plaza, Safeway, and Third Wallingford, respectively. Defendant City of Butte will be referred to as the City. Three of the four landowners of the annexed property are corporations, being Romney Hotels, E & L Real Estate, and Third Wallingford. The fourth landowner is a private person, Burritt, operating an animal hospital but not residing in the annexed area. Plaintiffs Butte Plaza and Safeway are lessees of a portion of the annexed property from E & L Real Estate and Third Wallingford, respectively. Two separate suits were filed contesting the annexation which were subsequently consolidated.

The district court made the following findings of fact which were not disputed. The land owned by E & L Real Estate is leased by Butte Plaza, a partnership, and used as a typical retail shopping center which includes a grocery store, drug store, real estate office, tavern, restaurant, department store, barber shop, fabric store, shoe store, variety store, and a movie theater. The land owned by Romney Hotels is used as a motel with a restaurant, bar, and a gas station located thereon. The land owned by Third Wallingford is leased to Safeway and used as a retail grocery store containing an in-store bakery and meat counter. The land owned by Burritt is used for a veterinary office and animal hospital.

Plaintiffs excepted only to Findings XIII and XIV, which stated in substance that none of the plaintiffs are resident freeholders of the property sought to be annexed and that none of the land annexed was used for industrial or manufacturing purposes, within the meaning of section 11-403, R.C.M. 1947.

Plaintiffs do not raise upon this appeal any objections regarding the procedure followed by the City in the annexation. Therefore, we shall consider that the City followed the statutory procedure for annexation as set forth in section 11-403, R.C.M. 1947.

From the district court's judgment quashing the alternative writs of prohibition previously issued and dismissing the consolidated action, plaintiffs now appeal.

The issues presented for review may be summarized: (1) Is any of the annexed land used for industrial or manufacturing purposes within the meaning of section 11-403, R.C.M. 1947? (2) Are any of the plaintiffs resident freeholders of the annexed properties? (3) Does section 11-403, R.C.M. 1947, establish discriminatory classifications without compelling justification in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution?

Plaintiffs contend initially that the annexed land was used for "industrial purposes" within the meaning of section 11-403(1), R.C.M. 1947, thereby requiring written consent of the landowners for annexation into the city. This limitation was added by the legislature in 1961.

The Court's function is to construe the language of the statute in accordance with its usual and ordinary acceptance, with a view to giving vitality to and making operative all provisions of the law and accomplishing the intention of the legislature when ascertainable. Section 93-401-16, R.C.M. 1947; County of Hill v. County of Liberty, 62 Mont. 15, 203 P. 500. Interpreting section 11-403, R.C.M. 1947, in its entirety it is logical

to presume that the legislature intended to make the annexation process easier in larger cities and at the same time permit designated residents, freeholders, or businesses a voice in this process.

Plaintiffs would have us construe "industrial purpose" in its broad sense to include what are generally termed commercial, mercantile, trade, or professional pursuits. Thus the businesses involved here --- a commercial shopping center with a number of retail stores, a motel, a gas station, a barber shop, a real estate office, a movie theater and a veterinary office and animal hospital---would be within the definition of "industrial purpose".

Plaintiffs' expert witness, an economist, gave a technical definition of "industrial", one that would be used among economists. It is not the usual, ordinary, or commonly understood definition of the word. Likewise, plaintiffs' dictionary definition of "industrial" is too broad. Defining "industry" as "any department or branch of art, occupation, or business conducted as a means of livelihood or for a profit; especially, one which employs much labor and capital and is a distinct branch of trade", is such a broad classification that it would effectively block any annexation attempt where a business is involved and thus destroy the purpose of the statute. (Black's Law Dictionary 4th Ed.)

Plaintiffs cite an 1888 case, Carver Mercantile Co. v. Hulme, 7 Mont. 566, 19 P. 213, as authority for using a broad definition of "industrial". Carver involved the authority to organize corporations and adopted a broad definition to accommodate the purpose of the incorporation statute. The same or similar purpose does not exist in the annexation statute here so Carver is readily distinguishable.

The goal of statutory interpretations is to give effect to the purpose of the statute. County of Hill v. County of Liberty, supra. To give effect to the purpose of the statute

- 4 -

as intended by the legislature, the context in which the words are used is more important than precise grammatical rules or a dictionary definition. Home Bldg. & Loan v. Bd. of Equalization, 141 Mont. 113, 375 P.2d 312.

For the purposes of section 11-403, R.C.M. 1947, we adopt a more limited definition of industrial purpose. "Industrial purpose" is limited to any factory, business or concern which is engaged primarily in the manufacture or assembly of goods or processing of raw materials unserviceable in their natural state which are extracted, processed, or made fit for use or are substantially altered or treated so as to create commercial products or materials. This definition is similar to that given by the legislature in establishing a classification and defining "new industrial" business for purpose of taxation. Section 84-301, R.C.M. 1947. This section specifically excludes property used by retail or wholesale merchants, commercial services of any type, agriculture, trades, or professions. That statutory classification was enacted by the Montana legislature in 1961, the same year the "industrial and manufacturing" clause was added to section 11-403, R.C.M. 1947.

In addition, the distinction made between "commercial" and "industrial" in Calvert v. City of Great Falls, 154 Mont. 213, 462 P.2d 182, leads us to believe the legislature intended such limited definition.

Nonetheless, plaintiffs argue that the bakery and meat market in the Safeway store renders that property, at least, industrial. We observe that this in-store bakery and meat market are merely incidental to the operation of Safeway's principal business on the premises, a retail grocery. Under the foregoing definition of industrial which we have adopted in this case, these incidental operations do not convert Safeway's principal business into an "industrial" operation in any event.

None of plaintiffs involved here qualify under this limited definition of "industrial purpose".

The next issue raised is whether the definition of "resident freeholder" under section 11-403, R.C.M. 1947, includes a corporation. This section provides in pertinent part:

"* * * that such resolution [of annexation] shall not be adopted by such council if disapproved, in writing, by a majority of the resident freeholders, if any, of the territory proposed to be embraced * * *."

In Kunesh v. City of Great Falls, 132 Mont. 285, 317 P.2d 297, this Court defined "resident freeholder" for the purposes of this section as one who is a resident within the area to be annexed, holding a present legal title to a freehold estate in real property located within the area to be annexed. Such definition was reaffirmed in Brodie v. City of Missoula, 155 Mont. 185, 468 P.2d 778. Neither case however, deals with the specific problem of the residence of a corporation.

Section 11-403, R.C.M. 1947, provides that the protesters must live in the area to be annexed and have a freehold interest in land in the area. In the instant case, four of the plaintiffs are corporations, one is a partnership, and one is a natural person.

In Kunesh at pages 289,290 of 132 Mont., this Court discussed the requirements of "residence" at length:

"Residence has been defined as the place where a man makes his home * * * and that residence '* * * is the place where one remains when not called elsewhere for labor or other special or temporary purposes; and to which he [the resident] returns in seasons of repose'.

" * * *

"'While the word "residence" has been involved in many controversies * * * it will be found that it is not the word itself that has been difficult of understanding. It has been in the construction of language expressive of the effect of residence, and of the rights arising therefrom and based on the fact of residence. In each such case the word becomes a part of a concept larger than itself, such as residence necessary to the right to vote, residence in establishing a domicile, residence necessary to citizenship, etc.'"

Plaintiffs and defendant separately cite cases and Montana statutes which in some instances would include a corportion as a natural person having a place of residence (Section

- 6 -

19-103, R.C.M. 1947; Quaker City Cab. Co. v. Pennsylvania, 277 U.S. 389, 48 S.Ct. 553, 72 L ed 927) and at other times would not (Section 83-303, R.C.M. 1947; Pittsburg, C., C. & St.L.Ry. Co. v. City of Indianapolis, 147 Ind. 292, 46 N.E. 641).

Whether or not a corporation is to be considered the same as a natural person for residence purposes depends entirely upon the context of the particular statute in question. From the above discussion, it is clear that section 11-403, R.C.M. 1947, requires actual residence on the property sought to be annexed in order to qualify for protest and thus excludes a corporation which possesses no actual residence as distinquished from a legal residence for some purposes. Thus a corporation is not a "resident freeholder" within the meaning of this statute.

The same reasoning applies to a partnership, likewise a legal entity with no actual residence.

The final issue is whether the annexation statute, section 11-403, R.C.M. 1947, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by establishing discriminatroy classifications without compelling justification. The statute allows the right of protest to resident freeholders, but not to resident nonfreeholders nor nonresident freeholders.

Plaintiffs contend that several recent United States Supreme Court decisions dealing with voting rights in school districts, Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L ed 2d 583 (1969); voting rights in bond elections, Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L ed 2d 647 (1969); in welfare cases, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L ed 2d 600 (1969); and other similar cases should be considered in ruling this statute discriminatory class legislation and uncon-stitutional.

We note that these cases deal with the protection of the rights of "natural persons" based on their residence. The United States Supreme Court has not as yet seen fit to extend the right

to vote or collect welfare benefits to corporate or partnership entities in the absence of statute. In the instant case the protesting corporations and partnership, although their land is subject to taxation for school levies, special improvement districts, and general taxes, have no right to vote on such levies.

Annexation is generally regarded as a political matter exclusively for the legislature to regulate, unless specifically restrained by the Constitution. The legislature can authorize annexation without the consent and even against the wishes of the people living in the area to be annexed. Harrison v. City of Missoula, 146 Mont. 420, 407 P.2d 703. The extension of the corporate limits of a city is ancillary to governmental maintenance of the health, safety, general welfare, and good order of those communities which are formed by dense collections of citizens in particular localities. Such is constitutional even though the annexed territory may receive no direct benefit from incorporation in return for the municipal burdens thereby imposed upon it. 2 McQuillin Mun Corp (3rd Ed) § 7.10, p. 309.

Section 11-403, R.C.M. 1947, was first declared valid and constitutional in Harrison v. City of Missoula, supra. In that case, the protesters claimed section 11-403, R.C.M. 1947, was "class legislation" in that a distinction is made between "freeholder" and "resident freeholder" and that there had been a "taking of property" without due process. We held otherwise. Subsequently this Court upheld the constitutionality of this statute in Calvert v. City of Great Falls, supra, where the protesters challenged the legislative exemptions relating to compulsory annexation of land devoted to industrial and manufacturing enterprises and similar purposes. The same result was reached by this Court in Brodie v. City of Missoula, supra. In Brodie we held that the compulsory annexation of territory "wholly surrounded" by the city did not violate federal or state constitutional provisions proscribing the taking of private property without due process of law. See also: Sailors v. Kent Board of Ed., 387

U.S. 105, 87 S.Ct. 1549, 18 L ed 2d 650 (1967); Hunter v. Pittsburg, 207 U.S. 161, 28 S.Ct. 40, 52 L.ed. 151 (1907).

More particularly, however, plaintiffs attack the constitutionality of that provision in section 11-403, R.C.M. 1947, which limits protests to "resident freeholders" in cities over 10,000 population, while in smaller cities a protester need only meet the qualification of a "freeholder" without regard to residence on the property to be annexed.

In Calvert this Court summarized the general rule that a statute is presumed to be constitutional in language appearing on pages 218, 219 of 154 Montana:

> "In this state the presumption of constitutionality becomes specific when the claim of 'class legislation' is raised for much of our legislation in the field of property law imposes distinctions and classifications. These distinctions and classifications have been upheld whenever found to be reasonable and to operate equally upon every person or thing in a given class. State ex rel. Redman v. Meyers, 65 Mont. 124, 128, 210 P. 1064; State ex rel. Morgan v. White (Ret.Sys.), 136 Mont. 470, 348 P.2d 991."

This Court, however, went on to say:

> "'The constitutional safeguard against unjust discrimination in legislation of this type is well defined by the decisions everywhere, and that is, that the classifications must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. (Mills v. State Board of Equalization, 97 Mont. 13, 31, 33 P.2d 563.)'"

The legislature may provide at its discretion the manner of protesting and the parties privileged to protest. In fact, statutes often require the consent of only a designated proportion of the voters, or property owners in the territory to be annexed. The consent of others not so designated is immaterial. 2 McQuillin Mun Corp (3rd Ed) § 7.16, p. 335. A nonresident freeholder of the annexed area may constitutionally be excluded from those permitted to protest. Adams v. City of Colorado Springs, 308 F.Supp. 1397, Aff'd 399 U.S. 901, 90 S.Ct. 2197, 26 L ed 2d 555; Rogers v. City and County of Denver, 161 Colo. 72, 419 P.2d 648.

There are governmental as well as economic reasons for the legislature to make annexations easier for larger cities.  In Adams at p. 1404, the court said:

> "The metropolitan area is a single social and economic unit, yet it has no consolidated government * * *[Annexation] permits a united approach to solving the problems and supplying the needs of the urban area, in terms of planning and rendition of service as well as fiscal balance."

Considerable differences exist between cities having a population in excess of 10,000 and those less than 10,000 population.  In the instant case, Butte's Mayor testified to some of these peculiar problems, i.e., larger cities addressing themselves to problems in the area of assistance to senior citizens, expanded youth programs, and the necessity of more sophisticated and specilized sewage treatment and water plants, for example.

In addition, Montana statutes are full of examples where the legislature has set forth different requirements for the different classes of cities according to population.  See:  Title 11, R.C.M. 1947.

We hold that the classifications established by the legislature in limiting protests to annexation to resident freeholders in first class cities, while permitting protests by freeholders without regard to residence in smaller cities is not only a rational distinction but also promotes a compelling governmental interest and is therefore constitutional.  To summarize,the legislature in enacting section 11-403, R.C.M. 1947, intended to make the process of annexation easier in larger cities.  Services in the larger cities are ever increasing due to various and diverse growth trends.  The larger city tends to become the hub of commerce for a metropolitan area not only in terms of services for its own citizens but also for persons in its metropolitan area outside the city limits.  Eventually, the two groups become virtually dependent upon one another.  They become a single entity having common needs. Easier annexation permits such larger city to broaden its tax base

and thus spread the costs among those who use its services. Easier annexation permits the larger city to provide these services which are essential for the health, safety, and general welfare of the entire area.

For these reasons, the consolidated judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____ ,

_____
Associate Justices.