1999-NMCA-143

993 P.2d 85

STATE of New Mexico, ex rel., STATE HIGHWAY AND TRANSPORTATION DEPARTMENT OF NEW MEXICO, Petitioner–Appellant,

v.

CITY OF SUNLAND PARK, Respondent–Appellee.

Paseo Del Norte Limited Partnership, A New Mexico limited partnership, Petitioner–Appellant,

v.

City of Sunland Park, Respondent–Appellee,

v.

Board of County Commissioners of Doña Ana County, Intervenor–Appellant.

No. 19660.

Court of Appeals of New Mexico.

Sept. 9, 1999.

Certiorari Granted Nov. 1, 1999.

Patricia A. Madrid, Attorney General, Arthur J. Waskey, General Counsel, William T. Moyers, Special Assistant Attorney General, Santa Fe, for Appellant State of New Mexico.

Donald M. Salazar, Serina M. Garst, Rubin, Katz, Salazar, Alley & Rouse, Santa Fe, for Appellant Paseo Del Norte Limited Partnership.

Lisa L. Warren, Doña Ana County Attorney, Thomas R. Figart, Assistant County Attorney, Las Cruces, for Intervenor Appellant Doña Ana County.

Frank R. Coppler, Nancy E. Nickerson, Paul D. Mannick, Coppler & Mannick, P.C., Santa Fe, for Appellee City of Sunland Park.

## OPINION

HARTZ, Judge.

{1} Appellants—the New Mexico State Highway and Transportation Department (the Highway Department), Doña Ana County (the County), and Paseo Del Norte Limited Partnership (PDN)—appeal a district court order upholding the annexation of certain land by the City of Sunland Park (the City). They contend that a number of irregularities invalidated the annexation. We need not address most of their contentions. We hold that the annexation was invalid because it did not include streets bordering the territory to be annexed. *See* NMSA 1978, § 3-7-18 (1965). We also hold that the

Highway Department had standing to challenge the annexation. Therefore, we reverse the district court order upholding the annexation and remand with directions to the district court to set aside the annexation.

## I. *BACKGROUND*

{2} The annexed territory that is the subject of this appeal consists of approximately 19 acres of private lands and 18 acres of public lands. The private lands are two parcels owned by P.O.S.T. Land Limited Company (POST), located five miles west of the City. One of the parcels, 10 acres in size, is located near the Santa Teresa international port of entry, along the west side of the southbound portion of State Highway 136, a divided highway leading to the border with Mexico. POST's other parcel, a 9.211 acre tract, is located a short distance to the north, along the east side of the same highway.

{3} The public land also consists of two separate units. One is the portion of State Highway 136 that connects the two POST parcels. Its area is 8.614 acres. The other is a 16–foot–wide strip ("the border strip") running along the United States side of the border with Mexico for five miles, connecting POST's southern parcel to the City. Its area is 9.361 acres. The border strip is located within a 60–foot–wide International Buffer Zone along the border; it is owned by the United States. The annexed territory, public and private, totals 37.186 acres.

{4} In early 1997 Jack Pickel, POST's manager, petitioned for annexation under the authority of NMSA 1978, § 3–7–17 (1981), which then stated:

A. Whenever a petition:

(1) seeks the annexation of territory contiguous to a municipality;

(2) is signed by the owners of a majority of the number of acres in the contiguous territory;

(3) is accompanied by a map which shall show the external boundary of the territory proposed to be annexed and the relationship of the territory proposed to be annexed to the existing boundary of the municipality; and

(4) is presented to the governing body, the governing body shall by ordinance express its consent or rejection to the annexation of such contiguous territory.

B. If the ordinance consents to the annexation of the contiguous territory, a copy of the ordinance, with a copy of the plat of the territory so annexed, shall be filed in the office of the county clerk. After the filing, the contiguous territory is part of the municipality. The clerk of the municipality shall also send copies of the ordinance annexing the territory and of the plat of the territory so annexed to the secretary of finance and administration and to the secretary of taxation and revenue.

C. Within thirty days after the filing of the copy of the ordinance in the office of the county clerk, any person owning land within the territory annexed to the municipality may appeal to the district court questioning the validity of the annexation proceedings. If no appeal to the district court is filed within thirty days after the filing of the ordinance in the office of the county clerk of it [or if] the court renders judgment in favor of the municipality, the annexation shall be deemed complete.

(Alteration in original.)

{5} On March 3, 1997, the City posted a "Notice of Consideration of Proposed Ordinance" in six places within the City. The Notice described a proposed annexation of 45.377 acres, not 37.186 acres, "CONTIGUOUS TO THE CURRENT SOUTHWESTERN BOUNDARY OF THE CITY," to be considered by the city council on March 18. No maps were posted with the Notice. The City did not publish the notice in a newspaper. (There is no newspaper published in Sunland Park). *See* NMSA 1978, § 3–17–3 (1973) (statutory requirements for notice of proposed ordinances). No representative of the Highway Department, PDN, or the County attended the meeting. Neither Pickel nor the City sought permission of any governmental entity to annex the highway or the strip. *See* NMSA 1978, § 3–7–4(A) (1965) (requiring consent of county, state, and federal governments to annex their land).

{6} Pickel presented his proposal at the March 18 city council meeting. The minutes of the meeting reflect that Pickel showed the council members a map of the area to be annexed, and that at least two of the four council members present did not know where the land was. According to the city council minutes, after some discussion of the POST property and the benefits to be gained by the City from its proposed expansion, the council passed "[a]n ordinance granting the petition by owners of a majority of 45.377 acres of territory contiguous to the current southwestern boundary of the City of Sunland Park" by a vote of four in favor, two absent. The ordinance was signed by the Mayor and dated March 18, 1997. It described an annexation of 37.186 acres.

{7} The City posted a notice of adoption of the ordinance, and on March 20, 1997, it filed with the county clerk the ordinance and two maps. On April 18 the Highway Department and PDN filed appeals with the district court. The City moved to dismiss the appeals on the ground that neither party owned any of the annexed land. Alternatively, the City argued that even if the Highway Department owned State Highway 136, it lacked standing to challenge the ordinance because it could not allege any injury from the annexation. On August 1, 1997, the County moved to be joined as a necessary party to the appeal on the ground that it held legal title to the highway. *See State ex rel. Sweet v. Village of Jemez Springs, Inc. City Council,* 114 N.M. 297, 300–01, 837 P.2d 1380, 1383–84 (Ct.App.1992) (discussing joinder of party to appeal of administrative ruling). The district court denied the City's motion to dismiss and allowed the County to intervene. The court held that the Highway Department and PDN had "sufficient ownership" to give them standing to maintain the suit. After a trial on the merits in February 1998, the court approved the annexation. The court found that the City "1. did not act fraudulently, arbitrarily or capriciously; 2. made its decision based on substantial evidence; 3. acted within the scope of its authority; and 4. the action of the City was otherwise in accordance with law."

## II.  DISCUSSION

### A.  Right to Appeal to District Court

{8} The City challenges the right of each of the three Appellants to appeal the annexation ordinance to district court. It claims that the County's appeal was untimely and that the Highway Department and PDN lacked standing.

### 1.  Timeliness of the County's Intervention

{9} We first address the County's appeal. Section 3–7–17(C) governs the timeliness of an appeal of a municipal annexation by the petition method. It permits appeals to district court "[w]ithin thirty days after the filing of the copy of the ordinance in the office of the county clerk." The annexation ordinance was filed with the county clerk on March 20, 1997. But the County did not move to join until August 1, 1997, long after the thirty-day period had expired. In its reply brief on appeal to this Court, the County responds to the City's timeliness argument solely on procedural grounds. Although the County acknowledges that the City "raised the timeliness issue in its response papers to the County's motion to intervene," it relies on the failure of the City to include the issue in the pretrial order and to cross-appeal on the issue. We are not persuaded.

{10} We are aware of no requirement that an issue already decided by the district court must be raised again in the pretrial order to be preserved. Prior to the filing of the pretrial order in this case, the district court had permitted the County to intervene, rejecting the City's untimeliness argument. Thus, the City had brought the issue to the district court's attention and obtained a ruling on it. This was sufficient to preserve the issue for appellate review. *See* Rule 12–216(A) NMRA 1999 (setting forth requirements for preserving questions for appellate review).

{11} Nor was it necessary for the City to cross-appeal on the issue. An appellee need not cross-appeal to raise an issue that would preserve the judgment below. Rule 12–201(C) NMRA 1999 states:

C. **Review without cross-appeal.** An appellee may, without taking a cross-appeal or filing a docketing statement or statement of the issues, raise issues on appeal for the purpose of enabling the appellate court to affirm, or raise issues for determination only if the appellate court should reverse, in whole or in part, the judgment or order appealed from.

Although in district court the County presented additional grounds in support of the timeliness of its intervention, we need not consider them because the County has not argued those grounds on appeal to this Court. *See Doe v. City of Albuquerque,* 96 N.M. 433, 436, 631 P.2d 728, 731 (Ct.App. 1981) ("Points of error not properly briefed or argued will not be considered.") Therefore, we hold that the County's intervention was untimely.

## 2. Standing of PDN and the Highway Department

■ {12} Standing to appeal to the district court is governed by Section 3–7–17(C), which authorizes an appeal by "any person owning land within the territory annexed to the municipality." PDN's status is unusual. When it filed its appeal, it contended that it owned some of the annexed land. It interpreted the annexed border strip to be the actual road along the border that crosses PDN land at some points. The district court proceedings, however, clarified that the border strip is not the border road but merely the sixteen-foot-wide strip of land adjoining the border. Once that matter was resolved, it became apparent that PDN does not own property in the annexed territory. As a result, PDN had no standing to challenge the annexation. In other words, although lack of standing was not apparent on the face of PDN's appeal to district court, the facts as resolved by the district court established that PDN lacked standing.

■ {13} As for the Highway Department, the City argues that it lacked standing because (1) the Highway Department did not have title to any land within the annexed territory and (2) even if it had title, it suffered no injury from the annexation. We reject both arguments.

{14} The Highway Department acknowledges that at the time of its appeal to district court it did not have formal legal title to any portion of State Highway 136 within the annexed territory. The County held title. Nevertheless, the Highway Department contends that NMSA 1978, Section 67–2–5 (1929), gave it a sufficient ownership interest to confer standing. That section provides:

> *When any state highway in the state of New Mexico, is continuously used* by, or open for use to the public, as such, for a period of one year from and after the time this act [67–2–4, 67–2–5 NMSA 1978] goes into effect, or *for a period of one year* at any time thereafter, and the same has not been so used or occupied under any lease, contract or agreement recognizing the ownership of the right-of-way thereof in any person, firm or corporation, other than the state, *such right-of-way shall be and become the property of and fee thereto shall vest in the state of New Mexico* for such highway purposes, and the title thereto shall not thereafter be divested by adverse possession or in any other manner except with the consent of the state of New Mexico, so long as such right-of-way is so used for highway purposes.

(Emphasis added.) (Alteration in original.) The City does not dispute that at the time the Highway Department filed its appeal, State Highway 136 had been a state highway for more than a year. Although in district court the City filed a pleading suggesting that the highway had "been so used or occupied under [a] lease, contract or agreement recognizing the ownership of the right-of-way thereof in [a] person ... other than the state," it produced no evidence to support this suggestion at the hearing on the motion to dismiss the Highway Department's appeal. Moreover, the Highway Department submitted an affidavit asserting that arrangements were underway to "transfer the formal title for the right-of-way" to the Department. At the hearing on the motion to dismiss, the City made no argument that the Highway Department was not the owner of the right of way, but instead focused on the lack of injury to the Highway Department.

{15} In our view, the State's interest granted by Section 67–2–5 satisfies the requirement for standing under Section 3–7–17(C). Even if the County held legal title, the State had what amounted to equitable title. Indeed, the State's interest was superior to the equitable title to real estate held by a purchaser under a real estate contract, because all conditions necessary for the State's acquiring title had been satisfied. *Cf. State ex rel. Stephens v. City of Hamilton,* 161 Mont. 1, 504 P.2d 283 (1972) (under statute permitting "freeholders" to protest annexation, contract purchasers of property could protest); *Watson v. Doolittle,* 10 Ohio App.2d 143, 226 N.E.2d 771, 772 (1967) (under statute permitting "any person interested" to sue to enjoin annexation, contract purchaser could sue); *City of Bells v. Greater Texoma Util. Auth.,* 790 S.W.2d 6, 11 (Tex.App.1990) (purchaser of property could challenge annexation).

■ {16} Once the Highway Department satisfied the "ownership" requirement of Section 3–7–17(C), there was no need for it to establish that it suffered any injury from the annexation. The statute permits all owners, without restriction, to appeal the annexation. We are unwilling to add a requirement for standing not set forth in the statutory language.

**B. Merits**

■ {17} Our review of the annexation ordinance is limited to consideration of whether it was enacted in accordance with the governing statute. *See Dugger v. City of Santa Fe,* 114 N.M. 47, 53, 834 P.2d 424, 430 (Ct.App.1992). We focus on whether the ordinance was invalid because of the failure to annex streets adjoining the annexed territory. Section 3–7–18 provides:

> Any municipality annexing any territory shall include in the annexation any streets located along the boundary of the territory being annexed. As used in this section, "street" means any thoroughfare that is open to the public and has been accepted by the board of county commissioners as a public right-of-way.

Appellants contend that the annexation ordinance violated this statute because the annexation did not include two stretches of road bordering the northern POST parcel—State Highway 136 on the western border of the parcel and Cattleman's Road on the northern border. We agree with respect to State Highway 136 and therefore need not consider Cattleman's Road.

■ {18} Although not disputing that State Highway 36 is a "street," the City makes several arguments that there was no need to annex the portion of the highway along the western boundary of the northern POST parcel. First, it contends that State Highway 136 is not "immediately located along the boundary" of the parcel because "[State Highway] 136 is separated from [the] northern tract by more than a 100 foot wide strip of land which does not contain a road." Apparently, the City is simply pointing out that the roadway, as opposed to the right of way, is 100 feet from the POST parcel. In district court the City stated:

> [Appellants] propose that in order to comply with NMSA 1978 § 3–7–18, the annexation petition should have included the section of the right of way for [State Highway] 136 that lies west of the northernmost of the P.O.S.T. parcels. However, reference to the map included with the petition as well as the map attached as Exhibit A to the Brief of [the Highway Department] and the map attached hereto as Exhibit A clearly show that the road itself only occupies the western 75′ of the 200′ right of way. Therefore, the road itself is not "located along the boundary" of the northern parcel of the P.O.S.T. land and is not subject to mandatory annexation under NMSA 1978 [§] 3–7–18.

In other words, the City is arguing that Section 3–7–18 applies only when the roadway itself borders the annexed territory.

{19} The City's argument proves too much. If the argument were valid, Section 3–7–18 would rarely, if ever, come into play, because almost no annexed property adjacent to a right of way would actually border the roadway itself. Roadways ordinarily do not extend to the border of the right of way. Virtually always included in a right of way is what could be termed a buffer zone. The

Motor Vehicle Code definition of "roadway" is suggestive. NMSA 1978, Section 66–1–4.15(N) (1990), states:

> "[R]oadway" means that portion of a street or highway improved, designed or ordinarily used for vehicular travel, exclusive of the berm or shoulder and in the event a highway includes two or more separate roadways, the term "roadway" refers to any such roadway separately but not to all such roadways collectively.

The "roadway," as one would expect from common usage, is only a portion of the street.

{20} Moreover, the language of Section 3–7–18 itself indicates that a "street" is the entire right of way. The statutory definition of "street" is "any thoroughfare . . . accepted by the board of county commissioners as a public *right of way*." (Emphasis added.) Accordingly, we hold that the word "street" in Section 3–7–18 encompasses the entire right of way and reject the City's first argument.

■ {21} The City also appears to suggest that Section 3–7–18 does not apply to state roads, because, it contends, the section's sole concern is assigning the duty for road maintenance and the State has the duty to maintain state roads regardless of whether they are annexed to a city. Section 3–7–18, however, makes no exception for state roads. Given the unambiguous statutory language, we are not tempted to concoct exceptions to the language by speculating about what purposes may be served by Section 3–7–18. A virtually identical argument was presented in *In re Village of Green Oaks*, 1 Ill.App.3d 773, 275 N.E.2d 462, 464–65 (1971) (*Green Oaks I*). An identical response is appropriate: "As the language of the statute is clear and explicit, the annexation must be exercised in the circumstances and manner prescribed in the statute." *Id.* at 465.

{22} Next, the City argues that "[t]here is no statutory requirement that a petitioner include all the roads along his boundary," because all the requirements imposed on the petitioner are set forth in Section 3–7–17(A). That provision states:

A. Whenever a petition:

(1) seeks the annexation of territory contiguous to a municipality;

(2) is signed by the owners of a majority of the number of acres in the contiguous territory;

(3) is accompanied by a map which shall show the external boundary of the territory proposed to be annexed and the relationship of the territory proposed to be annexed to the existing boundary of the municipality; and

(4) is presented to the governing body, the governing body shall by ordinance express its consent or rejection to the annexation of such contiguous territory.

The City points out that the listed requirements do not include the Section 3–7–18 requirement of annexing adjacent streets.

{23} But if the territory described in the petition does not include adjacent streets, then Section 3–7–18 can be satisfied only if (1) the City has authority to expand the annexation beyond the territory included in the petition or (2) annexation of adjacent streets is "automatic." As for the first possibility, we find no such authority in the statute. As the City concedes, Section 3–7–17(A) gives the City only two choices—consent to the annexation or reject it. There is no language in the statute permitting any modification. In addition, permitting modification would undermine the notice requirements of the annexation statute, which are designed to advise the public what land is proposed for annexation. The situation here is similar to that in *Green Oaks I*. In that case the trial court dismissed the landowners' petition for annexation because the land described in the petition failed to include adjacent highways, as required by law. *See* 275 N.E.2d at 464. The trial court also refused the landowners' request to amend their petition to include the highways. *See id.* Affirming that refusal, the appellate court said: "[W]e have been cited no authority, statutory or otherwise, which would permit the changing of a legal description of the property to be annexed to add more property after the petition was filed and statutory notice was published . . . ." *Id.* at 465. Likewise, the City here has cited no authority authorizing a municipality to modify the boundaries set forth in a petition

for annexation. Perhaps the City on its own could initiate an annexation through the arbitration method, *see* NMSA 1978, § 3–7–5 (1965), or the boundary commission method, *see* NMSA 1978, § 3–7–11(A)(1) (1995), to add adjacent streets. But a later annexation would not satisfy Section 3–7–18, which states that adjacent streets shall be included in the annexation, not added in a subsequent annexation.

{24} The City focuses on the second possibility—automatic annexation of adjacent streets. It argues that "adjoining roads, to the extent they are actually state or county roads, would thus come into the City after the P.O.S.T. annexation is approved by operation of law pursuant to [Section] 3–7–18." In support of this contention the City cites *In re Village of Green Oaks, Lake County*, 58 Ill.App.3d 842, 16 Ill.Dec. 79, 374 N.E.2d 854 (1978) (*Green Oaks II* ). That case held that a petition for annexation was not invalidated by its failure to include adjacent highways in the described territory. But the court relied on a 1975 statutory amendment stating that " '[t]hese [adjacent] highways shall be considered to be annexed even though not included in the legal description set forth in the petition for annexation.' " *Id.* at 856 (quoting 65 Ill.Comp.Stat.Ann. 5/7–1–1 (West 1993)). The New Mexico statute has no such language. Rather, our statute closely resembles the pre–1975 Illinois statute. *Green Oaks I* interpreted the pre–1975 statute and invalidated an annexation because the petition did not include adjacent highways. *See Green Oaks I*, 275 N.E.2d at 464–65.

{25} Moreover, there is even greater reason under New Mexico law than under pre–1975 Illinois law to refuse to hold that adjacent streets are annexed as a matter of law. Under Section 3–7–4(A), territory owned by the United States, the State, or a political subdivision of the State can be annexed only with that entity's consent.[1] (Indeed, Appellants contend that there was no such consent here; but we need not address

that issue because we invalidate the annexation on other grounds.) Streets outside municipal boundaries will generally be owned by such an entity. If Section 3–7–18 results in annexation of such a street by operation of law, the consent requirement is vitiated. In other words, the City would have us read Section 3–7–18 as creating an exception to the requirements of Section 3–7–4(A). This we will not do. Courts should refrain from reading statutory provisions as contradicting one another. *See Luboyeski v. Hill,* 117 N.M. 380, 384, 872 P.2d 353, 357 (1994) ("Whenever possible, we must read different legislative enactments as harmonious instead of as contradicting one another.") We certainly should not stretch the meaning of the language of one provision to create a conflict with another. Yet that is what the City would have us do by reading Section 3–7–18 as providing for "automatic" annexation, regardless of whether consent has been obtained in compliance with Section 3–7–4(A).

{26} We also consider the related possibility that adjacent streets, rather than being annexed as a matter of law after the City governing body approves a petition, are simply deemed to be included within the petition, even if the petition omits them in the description of the territory to be annexed. The City does not raise this argument, and for good reason. The acreage of the omitted portion of State Highway 136 bordering the northern POST parcel is 2.66 acres. Inclusion of that acreage in the petition—explicitly or by operation of law—would increase the annexed acreage to 39.846 acres. The only signatory on the annexation was POST (through manager Jack Pickel), which owns 19.211 acres of the land proposed for annexation. This 19.211 acres is less than half the total of 39.846 acres. Because Section 3–7–17(A)(2) requires that the petition be signed "by the owners of a majority of the number of acres" in the territory to be annexed, the petition would be invalid. Although the City suggests that streets should not be included in the acreage for purposes of the majority-

---

1. Section 3–7–4(A) states:
  Territory owned by the government of the United States, its instrumentalities, the state of New Mexico or a political subdivision of New Mexico, may be annexed to a municipality upon the consent of the authorized agent of the government of the United States, its instrumentalities, the state of New Mexico or a political subdivision of New Mexico.

ownership requirement, the City cites no supporting authority and we find no statutory basis for that proposition. Section 3–7–17(A)(2) unambiguously refers to the "number of acres in the contiguous territory," without excepting any particular categories of land. Thus, because reversal would be necessary even if we adopted the view that adjacent streets are deemed to be included in the petition, we need not decide whether to adopt that view.

## III. *CONCLUSION*

{27}  We hold that the Highway Department had standing to challenge the annexation and that the annexation was invalid because it did not include an adjacent street. We reverse the judgment of the district court and remand with instructions to set aside the annexation ordinance.

{28}  **IT IS SO ORDERED.**

WECHSLER and BUSTAMANTE, JJ., concur.

