2004-NMCA-111

97 P.3d 633

**SANTA FE COUNTY BOARD OF COUNTY COMMISSIONERS,** Petitioner–Appellant,

v.

**TOWN OF EDGEWOOD,** Respondent–Appellee,

and

**Campbell Farming Corporation,** Intervenor.

No. 23,540.

Court of Appeals of New Mexico.

July 19, 2004.

Monica M. Ontiveros Assistant County Attorney, Santa Fe, NM, for Appellant.

David Henderson, Downing & Henderson, P.C., Santa Fe, NM, for Appellee.

Randall L. Thompson, Thompson & Kushner LLP, Albuquerque, NM, for Intervenor.

## OPINION

WECHSLER, Chief Judge.

{1} The Santa Fe Board of County Commissioners (the County) appeals from a district court order dismissing its appeal from a Town of Edgewood (the Town) municipal ordinance expressing the Town's consent to the annexation of property within the county. Dismissal was based on the ground that the County lacked standing because it did not own land within the annexed territory, as required by the applicable annexation statute, NMSA 1978, § 3–7–17(C) (1998). On appeal, the County argues that it satisfies the statutory requirement of "owning land" in the annexed territory because its mainte-

nance of public roads in the annexed area has created title by prescription or common law implied dedication. The County claims that this conclusion is supported by our recent case law interpreting this standing requirement and by the legislative purpose behind the statute. Because Section 3–7–17(C) requires equitable or legal fee title to real property in the area annexed, the County's use interest is insufficient to give it standing to appeal. Accordingly, we affirm the district court.

*Background*

{2} The Town adopted a number of ordinances in the fall of 2001 that approved the annexation of land within Bernalillo, Sandoval, and Santa Fe counties pursuant to the petition method of annexation, as set forth in Section 3–7–17. The County filed an appeal in district court on January 2, 2002, challenging the validity of all of the ordinances. The County subsequently agreed to the dismissal of its appeal except as to a single ordinance involving the consent to the annexation of 18,214 acres under Section 3–7–17(A)(4). The County took the position that there were a number of technical deficiencies with the petition method of annexation that was used.

{3} The Town moved to dismiss the County's appeal arguing that the County lacked standing. Specifically, the Town argued that whatever interest the County had through its maintenance of various public roads, this interest did not rise to the level of "owning land" as required by Section 3–7–17(C). The County argued in response that it "owned" a number of roads within the territory annexed because the public's use and the County's maintenance of the roads created a public easement by prescription. Campbell Farming Corporation (Campbell), owner of fee simple title to 13,538 acres of the 18,214 acres subject to the appeal, intervened. Campbell argued that regardless of whether a prescriptive easement had been created, such a use interest was insufficient to satisfy the ownership requirement of the statute. After a hearing, the district court entered its order dismissing the appeal, essentially agreeing with the Town and Campbell that, even if it assumed that the County had a use interest in the property, the County's interest did not amount to "owning land" as required in Section 3–7–17(C).

*Standard of Review*

{4} The issue of standing generally involves a question of law that is reviewed de novo on appeal. *See Forest Guardians v. Powell,* 2001–NMCA–028, ¶ 5, 130 N.M. 368, 24 P.3d 803. Typically, standing to contest governmental action involves a fairly broad inquiry. *See De Vargas Sav. & Loan Ass'n v. Campbell,* 87 N.M. 469, 473, 535 P.2d 1320, 1324 (1975). In the context of this appeal, however, the legislature has provided a specific, more restrictive test for standing in cases involving the petition method of annexation. *See* § 3–7–17(C) (stating requirement of "any person owning land within the territory annexed"). In construing the language of this statute, we likewise apply a de novo standard of review. *See Morgan Keegan Mortgage Co. v. Candelaria,* 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (noting that interpretation of a statute is a question of law which an appellate court reviews de novo). In doing so, we must be mindful of the procedural posture of this case. *See City of Sunland Park v. Santa Teresa Servs. Co.,* 2003–NMCA–106, ¶ 39, 134 N.M. 243, 75 P.3d 843 (stating that appropriate standard of review depends on procedural posture if additional facts are presented). Because the district court considered matters outside of the pleadings, including an affidavit, in support of the County's claim that there are county roads in the annexed area, the procedural posture is an appeal from an order granting summary judgment. *Peck v. Title USA Ins. Corp.,* 108 N.M. 30, 32, 766 P.2d 290, 292 (1988) (upholding treatment of motion to dismiss as motion for summary judgment after presentation of matters outside the pleadings). Therefore, in applying our de novo interpretation of Section 3–7–17(C), we consider the facts in the light most favorable to the County's position. *See Madsen v. Scott,* 1999–NMSC–042, ¶ 7, 128 N.M. 255, 992 P.2d 268.

*Section 3–7–17(C)*

{5} Under the petition method of annexation, standing to appeal is limited to

"any person owning land within the territory annexed." Section 3–7–17(C). In construing this language, the guiding principle is to give effect to the intent of the legislature. *See Roth v. Thompson,* 113 N.M. 331, 332, 825 P.2d 1241, 1242 (1992). In our inquiry, we first employ the "plain meaning rule" to determine if the language unambiguously sets forth the legislative intent. *See Roberts v. Southwest Cmty. Health Servs.,* 114 N.M. 248, 251, 837 P.2d 442, 445 (1992) ("Our interpretation of legislative intent comes primarily from the language used by the legislature, and we will consider the ordinary meaning of such language unless a different intent is clearly expressed."). Even if the language appears to be free of ambiguity, we nevertheless consider whether the plain language leads to an absurd result, runs counter to other statutory provisions, or otherwise appears contrary to legislative intent. *See State ex rel. Helman v. Gallegos,* 117 N.M. 346, 352–53, 871 P.2d 1352, 1358–59 (1994). We agree with the Town and Campbell that the plain meaning of "owning land" is to have equitable or legal fee title ownership of real estate within the annexed territory. To "own" is "[t]o have or possess as property; to have legal title to." Black's Law Dictionary 1130 (7th ed.1999). Ownership includes the right to convey, *see id.* at 1131, which in this case translates into the right to convey land that lies within the territory annexed by the Town. Ownership of land also includes the right to exclude others, "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Kaiser Aetna v. United States,* 444 U.S. 164, 176, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979).

{6} "Land" is most commonly understood to refer to corporeal, physical property:

> "Ultimately, as a juristic concept,'land' is simply an area of three-dimensional space, its position being identified by natural or imaginary points located by reference to the earth's surface. 'Land' is not the fixed contents of that space, although, as we shall see, the owner of that space may well own those fixed contents. Land is immovable, as distinct from chattels, which are moveable; it is also, in its legal significance, indestructible. The contents of the space may be physically severed, destroyed or consumed, but the space itself, and so the 'land', remains immutable."

Black's Law Dictionary at 881 (internal quotation marks and citation omitted).

■ {7} It follows that the plain meaning of "owning land" as used in Section 3–7–17(C) is to have an interest in real property that would amount to equitable or fee title. However, it would be unusual for statutory language to be absolutely free of ambiguity. *See Gallegos,* 117 N.M. at 353, 871 P.2d at 1359. The County argues therefore that "owning land" can mean "owning an interest in land." However, two considerations undermine this contention. First, we will not read language into a statute when the statute makes sense as written. *See High Ridge Hinkle Joint Venture v. City of Albuquerque,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599. If the legislature intended to expand the class of people who had standing to those who merely held some form of a property interest, such as a use interest, the legislature could easily have so worded the statute. Second, as noted above, the legislature has evinced an intent to streamline and expedite the appeal process by departing from general rules of standing to contest governmental action. *Cf. De Vargas Sav. & Loan Ass'n,* 87 N.M. at 473, 535 P.2d at 1324 ("[T]o attain standing in a suit arguing the unlawfulness of governmental action, the complainant must allege that he is injured in fact or is imminently threatened with injury, economically or otherwise."). As the Town and Campbell have pointed out, interpreting "owning land" to mean "owning an interest in land" would virtually eliminate the standing requirement because, as in these circumstances, the existence of a public easement could conceivably confer standing on all members of the traveling public. This result runs contrary to one of our guiding principles in determining legislative intent; we do not interpret a statute to render statutory language meaningless. *See Montoya v. Mentor Corp.,* 1996–NMCA–067, ¶ 19, 122 N.M. 2, 919 P.2d 410 ("We have always rejected an interpretation of a statute that would make parts of it mere surplusage or meaningless.").

■ {8} The County further argues that the legislature intended a flexible standing requirement because it did not provide any requirement for standing to appeal an annexation ordinance adopted by a municipality under the arbitration method of annexation. It contends that without flexibility, counties will generally not be able to appeal an annexation ordinance because counties do not generally own roads in fee. The County asserts that it has an interest in the annexation to ensure a smooth transition in the transfer of services. We agree with the County that we are to construe statutes in order to accomplish the intent of the legislature. *Burroughs v. Bd. of County Comm'rs*, 88 N.M. 303, 306, 540 P.2d 233, 236 (1975). However, we interpret the legislative intent differently from the County. As we have discussed, the legislature intended a more narrow standing requirement for the petition method than the County urges in order to streamline the appeal process. Under this legislative intent, counties that do not own roads in equitable or fee title may participate in the process leading to an ordinance consenting to an annexation petition in order to ensure an orderly transition in services, but may not appeal from the adoption of the ordinance.

*State ex rel. State Highway & Transportation Department v. City of Sunland Park*

{9} The County, the Town, and Campbell all argue that their positions are supported by this Court's decision in *State ex rel. State Highway & Transportation Department v. City of Sunland Park*, 1999–NMCA–143, 128 N.M. 371, 993 P.2d 85 (*Sunland Park*). In *Sunland Park*, the City argued that the State of New Mexico Highway Department failed to satisfy the "owning land" requirement in Section 3–7–17(C) because it did not hold title to land within the annexed territory. *Sunland Park*, 1999–NMCA–143, ¶ 13, 128 N.M. 371, 993 P.2d 85. The Highway Department acknowledged that it did not have legal title, but claimed that sufficient ownership interest was created by NMSA 1978, § 67–2–5 (1929), which vests fee title in the state for public roads in use for a period of one year. *Sunland Park*, 1999–NMCA–143, ¶ 14, 128 N.M. 371, 993 P.2d 85. This Court held that Section 67–2–5 gave the

Highway Department "what amounted to equitable title. Indeed, the State's interest was superior to the equitable title to real estate held by a purchaser under a real estate contract, because all conditions necessary for the State's acquiring title had been satisfied." *Sunland Park*, 1999–NMCA–143, ¶ 15, 128 N.M. 371, 993 P.2d 85.

{10} In its brief in chief, the County maintains that "[t]he [d]istrict [c]ourt's analysis fails to fully appreciate and contradicts this Court's holding in [*Sunland Park*]." A review of the County's arguments, however, indicates that it does not dispute the obvious holding of *Sunland Park*, that one must have legal or equitable title to land to satisfy Section 3–7–17(C). The County acknowledges that in *Sunland Park* the Highway Department had "what amounted to a statutory right to title, with the possibility of a reversion" by virtue of Section 67–2–5, which vests a property interest in a right of way for one year for a public highway in the State of New Mexico so long as it is used for highway purposes. There is no comparable statute pertaining to counties. Instead, the County disputes the determination that it lacked title to the property. We therefore consider the County's grounds for holding title.

*The County's Claimed Ownership Interest*

{11} The County claims that it has "title" for purposes of Section 3–7–17(C) as a result of either a prescriptive easement or implied or express dedication. Initially, we note that the County's use of the term "title" appears to be an effort to equate any property interest with an interest amounting to "title" sufficient to constitute ownership of land. Black's Law Dictionary defines "title" as: "The union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property; the legal link between a person who owns property and the property itself." Black's Law Dictionary at 1493; *cf. State v. Montano*, 93 N.M. 436, 441, 601 P.2d 69, 74 (Ct. App.1979) (adopting similar definition for title to a motor vehicle). Therefore, the County's claims of "title" in the context of Section 3–7–17(C) must demonstrate that the County actually owned the land in question.

### Prescriptive Easement

{12} The County's claim of a prescriptive easement is based on its maintenance of certain public roads within the annexed area. We agree with the Town, Campbell, and the district court that it is not necessary for us to decide whether the County had an easement. Even if it held an easement, it would not become an owner of the land in question. *Cf. Michelet v. Cole*, 20 N.M. 357, 363, 149 P. 310, 311 (1915) ("A party cannot have an easement in his own land, as all the uses of an easement are fully comprehended and embraced in his general right of ownership.") (internal quotation marks and citation omitted).

### Implied Dedication

{13} The County also claims that it has title by common law dedication, whereby a landowner offers to dedicate certain property for public use and the offer is accepted. *See Watson v. City of Albuquerque*, 76 N.M. 566, 568, 417 P.2d 54, 55 (1966). The County claims that the public has used the roads in question for at least fifteen years and no property owner has objected or intervened in this lawsuit. Again, however, even if we assume that there has been an implied offer by acquiescence and an acceptance by continued maintenance, the County would merely have a use interest, an easement in the property, which is insufficient to satisfy Section 3–7–17(C). *See* 23 Am.Jur.2d *Dedication* § 54, at 46 (2002) ("By a common-law dedication the fee does not pass; the public acquires only an easement in the land designated for its use."); *see also Luevano v. Maestas*, 117 N.M. 580, 586–87, 874 P.2d 788, 794–95 (Ct.App.1994) (recognizing the difference between prescriptive easement and common law dedication concerning rights of way and comparing common law dedication to easement by estoppel).

### Conclusion

{14} Standing under Section 3–7–17(C) requires an equitable or fee title interest. The County has at most a use interest. It is insufficient to confer standing under Section 3–7–17(C). We affirm the district court.

{15} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and RODERICK T. KENNEDY, Judges.