The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date : <u>December 3, 2024</u>

**No. A-1-CA-41415**

**R&R, LLC, a New Mexico limited liability company,**

Plaintiff-Appellee,

v.

**NEW MEXICO DEPARTMENT OF TRANSPORTATION,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Ellen R. Jessen, District Court Judge**

John D. Wheeler & Associates, P.C.
John D. Wheeler
Elizabeth K. Watson
Alamogordo, NM

for Appellee

Carrillo Law Firm, P.C.
Raúl A. Carrillo, Jr.
Las Cruces, NM

for Appellant

**OPINION**

**MEDINA, Judge.**

{1}    The New Mexico Department of Transportation (NMDOT) appeals the district court's declaratory judgment and award of damages in favor of Plaintiff, R&R, LLC (R&R), the prevailing party in an inverse condemnation action. NMDOT argues that it presented sufficient admissible evidence to create a question of material fact about an alleged prescriptive easement on a piece of property, informally known as the "Tularosa Triangle" (the Property), and therefore the district court's entry of partial summary judgment on that issue was reversible error. NMDOT also argues that the district court committed reversible error by excluding evidence related to the alleged prescriptive easement at trial, by taking judicial notice of a prior quiet title suit, and by not precluding the slander of title and intentional interference with contractual relations claims. For the reasons set forth below, we affirm the district court on all grounds.

**BACKGROUND**

{2}    R&R, a New Mexico limited liability company, acquired the Property in 2011. The Property is located in the middle of the intersection of U.S. Highways 54 and 70 in Tularosa, New Mexico, consists of 2.016 acres, and contains two buildings and a parking lot. At the time of R&R's purchase of the Property, the buildings on the

Property were used as a gas station and restaurant. In 2016, the district court granted R&R free and clear title to the Property in a quiet title action.

{3} In 2021, R&R entered into a purchase and sale agreement with Maverik, Inc. (Maverik), a national convenience store owner for the Property, at a purchase price of $720,000. In its good-faith investigation, Maverik reached out to NMDOT, and NMDOT claimed that it owned 90 percent of the Property. Maverik requested documentary proof of NMDOT's claimed ownership of the Property but, after several failed requests for proof of ownership, Maverik terminated the purchase agreement with R&R.

{4} In 2022, R&R filed a complaint for inverse condemnation, slander of title, declaratory judgment, and intentional interference with contractual relations against NMDOT alleging that NMDOT did not have an interest in any portion of the Property and NMDOT's misrepresentation of its ownership of the Property resulted in an interference with R&R's property rights. NMDOT answered stating that NMDOT has rights to "easements or rights-of-way [that] go across the Property."

{5} R&R moved for partial summary judgment asserting that NMDOT did not have an easement or right-of-way across the Property. R&R attached three affidavits to its memorandum in support of partial summary judgment. Each affiant asserted that none of the documents produced by NMDOT during discovery supported the

existence of an easement or right-of-way that encroached beyond the adjacent roadways into the Property.

{6}     NMDOT asserted in its response in opposition to the motion for summary judgment that "it has acquired a right[-]of[-]way and easement which traverses, crosses, or otherwise passes over the [P]roperty through prescriptive use of the [P]roperty post 1960." NMDOT attached an affidavit of Michael Smelker, an employee at NMDOT, to its response. Smelker asserted, in part, that "[p]ublic highway rights-of-way include the total land area acquired for the construction and maintenance of a public highway and may include prescriptive rights-of-way acquired by public use and reasonably necessary maintenance areas"; "[t]he width of a public right-of-way accommodates all the elements of a roadway cross section, including but not limited to, the travelling path/roadway itself, traffic safety clear zones, drainage features, maintenance use and access, pedestrian facilities, bike paths, and public utility facilities and infrastructure"; "[p]ublic rights-of-way often include areas/widths which may be used for future widening of a road and for any other improvements necessary for highway maintenance"; that a public right-of-way includes "clear zone[s]" and defines "clear-zone" as "an unobstructed, traversable roadside area that allows a driver to stop safely, or regain control of a vehicle that has left the roadway"; that some factors considered in determining the width of clear zones include average daily traffic and the speed limit of the roadway; that "[t]he

highway area in dispute in this litigation . . . is subject to the foregoing requirements for clear zones and maintenance activities on both sides of the centerline of each highway" and speaks to NMDOT right-of-way maps indicating widths of the subject rights-of-way that encroach into the Property; "[t]he use of the right[-]of[-]way by the traveling public and by the NMDOT for maintenance and safety has been open and continuous for more than one (1) year"; and "NMDOT has maintained the public right-of-way in question . . . as supported by regularly kept maintenance business records in the [d]istrict [o]ffice for more than one (1) year." Four pages of project maps alone, one showing a hashed line area allegedly indicating a public right-of-way that encroaches into the Property at issue are attached to Smelker's affidavit.

{7}     R&R filed a reply arguing that no portion of the Property has ever been used for highway purposes and therefore the State did not acquire prescriptive rights to the Property. In particular, R&R asserted NMDOT presented no evidence that "a clear zone was ever established upon the Property," "any highway maintenance has ever taken place on the Property," and "it was incumbent upon [NMDOT] to produce [records establishing that it maintained the Property at some point in the past] to oppose summary judgment." R&R also contended that "nothing [in the right-of-way maps attached to Smelker's affidavit] amounts to anything more than a depiction of the distance from the centerline of the nearby highway to the buildings on the Property. . . . [NMDOT does] not set forth the basis for the claim [of the existence

of an easement and/or right-of-way] or offer any evidence establishing facts necessary to form the foundation for such a claim."

{8}  R&R attached a supplemental affidavit by Larry Sterling, a New Mexico registered surveyor, to its reply. Sterling stated in part, "It is my express opinion, to a reasonable degree of professional certainty, based upon our firm's survey of the Property, that all the curbs along the highway near the Property are *not* actually located within the exterior boundaries of the Property, but rather are located on land owned by the State or someone else nearby"; "[i]t is my express opinion, to a reasonable degree of professional certainty, based upon our firm's survey of the Property, that all the inlets along the highway near the Property are *not* actually located within the exterior boundaries of the Property, but rather are located on land owned by the State or someone else nearby"; and "[i]t is my express opinion, to a reasonable degree of professional certainty, based upon our firm's survey of the Property, that all the shoulders along the highway near the Property are *not* actually located within the exterior boundaries of the Property, but rather are located on land owned by the State or someone else nearby."

{9}  Based on these motions and evidence and arguments presented during a hearing on the motion, the district court granted partial summary judgment in favor of R&R. The district court concluded that NMDOT had no prescriptive easement or right-of-way interest in the Property as a matter of law because NMDOT had not

presented admissible evidence of a written easement or of actual use of the disputed area.

{10} On the morning of trial, NMDOT argued that the district court did not have jurisdiction to hear either the slander of title or intentional interference with contractual relations claims. R&R conceded that, generally, one cannot sue the state for slander of title and neither can one sue the state for intentional interference with contractual relations when they are bringing an inverse condemnation claim. R&R informed the district court and NMDOT that it was going "forward on an inverse condemnation theory supported by the tortious interference with contractual relations and supported by the slander of title." R&R explained that the facts supporting the inverse condemnation claim were NMDOT's initial representation to Maverik that it owned 90 percent of the Property, thereby interfering with its property rights.

{11} During trial, the district court took judicial notice of R&R's prior quiet title action in which it was determined that R&R had title to the Property in fee simple. NMDOT argued that the State was not a party to the quiet title action and did not have an opportunity "to provide its opinion . . . to the district court with regard to the quiet title action." The district court recognized that R&R could not have brought a quiet title action against the State.

{12}   At the conclusion of trial, the district court determined that the State was liable for inverse condemnation of the Property. NMDOT now appeals.

**DISCUSSION**

{13}   We begin our review with the district court's grant of partial summary judgment as to the issue of a prescriptive easement because it is dispositive to the issue of whether the district court's exclusion of evidence regarding the claimed prescriptive easement during trial was error. *See Found. Minerals, LLC v. Montgomery*, 2024-NMCA-008, ¶ 11, ___ P.3d ___ (recognizing by implication, in a determination on the application of a de novo standard of review relating to a summary judgment ruling, that it is not inappropriate for a district court to determine an issue on summary judgment and avoid the admission of evidence on that issue at trial). We then address NMDOT's remaining claims.

**I.    Partial Summary Judgment Was Appropriate Because NMDOT Did Not Present Sufficient Admissible Evidence to Create a Genuine Issue of Material Fact as to the Existence of a Prescriptive Easement**

{14}   NMDOT argues that the district court erred in granting partial summary judgment because there was a genuine issue of material fact as to whether it had a prescriptive easement. NMDOT contends that it sufficiently presented a dispute of material fact by way of the Smelker affidavit along with the post-1960 right-of-way project maps that were attached to the affidavit. In particular, NMDOT argues that the right-of-way project maps reference the width of the easement acquired as 100

7

feet from the centerline of the highway and show that the easement encroaches on the Property. NMDOT asserts this is sufficient evidence that a prescriptive easement was acquired and maintained as needed by the State for highway construction maintenance. R&R responds that the Smelker affidavit did not allege that it used the Property for any highway purposes, either for a clear zone or for maintenance activities, and therefore NMDOT failed to put forward evidence sufficient to raise a question of fact, so judgment as a matter of law was appropriate on the issue of a prescriptive easement.

{15}	We review the grant of summary judgment de novo. *Romero v. Philip Morris Inc.,* 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. "[S]ummary judgment is a drastic remedial tool which demands the exercise of caution in its application, and we review the record in the light most favorable to support a trial on the merits." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126 (internal quotation marks and citation omitted). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque*

*v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id*.

{16}   The movant has the initial burden of making a prima facie showing that they are entitled to summary judgment, which constitutes "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Romero*, 2010-NMSC-035, ¶ 10 (internal quotation marks and citation omitted). Once the movant establishes this prima facie case for summary judgment, "the burden shifts to the non[]movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Kreutzer v. Aldo Leopold High Sch.*, 2018-NMCA-005, ¶ 27, 409 P.3d 930 (internal quotation marks and citation omitted). "If the non[]movant fails to do so, summary judgment, if appropriate, shall be entered against [them]." *Id*. (internal quotation marks and citation omitted).

{17}   As a preliminary issue, we clarify the slight distinction between the terms "easement" and "right-of-way" for two reasons. First, intermingling of the two terms persisted throughout the proceedings in the district court and continued in the briefing before this Court. Second, in order "[t]o determine whether a party has made a prima facie showing of entitlement to summary judgment, the court must look to

9

the substantive law governing the dispute." *Freeman v. Fairchild*, 2018-NMSC-023, ¶ 33, 416 P.3d 264 (internal quotation marks and citation omitted).

{18}     The vesting of title of highway rights-of-way is addressed by statute. The statute, NMSA 1978, Section 67-2-5 (1929), reads:

> When any state highway in the state of New Mexico, is continuously used by, or open for use to the public, as such, for a period of one year from and after the time this act goes into effect, or for a period of one year at any time thereafter, and the same has not been so used or occupied under any lease, contract or agreement recognizing the ownership of the right-of-way thereof in any person, firm or corporation, other than the state, *such right-of-way shall be and become the property of and fee thereto shall vest in the state of New Mexico* for such highway purposes, and the title thereto shall not thereafter be divested by adverse possession or in any other manner except with the consent of the state of New Mexico, so long as such right-of-way is so used for highway purposes.

(Emphasis added.)

{19}     An "easement," on the other hand, grants a "right to use or control" property and the holder of the right established by easement does not have title to the property. *Easement*, *Black's Law Dictionary* (12th ed. 2024). The party that owns the property maintains title, and their interest in the property is encumbered by the easement. *See id.*

{20}     In NMDOT practice and in some contexts, "right-of-way" and "easement" may be used interchangeably, because their meanings overlap to some or even to a great extent. This appears to be the basis of some of the interchangeable use of these

terms in the record. Still, Section 67-2-5 refers to the vesting of title for the land used for the purposes of a highway right-of-way, not merely the establishment of a right to use or control the land. Therefore, Section 67-2-5 does not result in the establishment of easements by prescription, because a right to use or control, not title to the land, is granted by an easement by prescription. Rather, where the requirements of an easement by prescription for highway purposes are met, the statute dictates that the area of land in the easement would thereby qualify as a "right-of-way" under the statute, such that title to that area of land vests in the state. *See State ex rel. State Highway. & Transp. Dep't v. City of Sunland Park*, 1999-NMCA-143, ¶¶ 14-15, 128 N.M. 371, 993 P.2d 85 (reasoning that "all conditions necessary for the [s]tate's acquiring title had been satisfied" under the statute by use of a roadway); *Santa Fe Cnty. Bd. of Cnty. Comm'rs v. Town of Edgewood*, 2004-NMCA-111, ¶ 9, 136 N.M. 301, 97 P.3d 633 (characterizing Section 67-2-5 where all conditions necessary for the state's acquiring title had been satisfied as providing "what amounted to equitable title" that was superior to title acquired under a real estate contract (internal quotation marks and citation omitted)).

{21}   Here, R&R does not dispute that the roadways of U.S. Highways 54 and 70, the shoulders of those roadways, the inlets of those roadways, and the curbs on the edge of those roadways are rights-of-way that belong to the State. The disputed area is the land that spans between the non-roadway side of the curbs and the buildings

in the middle of the triangular lot bordered by the roadways, representing a large portion of the 2.016-acre lot R&R attempted to sell. By relying on a prescriptive use theory, NMDOT effectively conceded that the State has no right to this land by express easement or title. Thus, the substantive law governing the summary judgment dispute is that of prescriptive easements: whether the elements of a prescriptive easement were met for the disputed portion of the Property such that the portion became a highway "right-of-way" thereby belonging to the State under the statute.

{22}   "[A]n easement by prescription is created by an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 10, 133 N.M. 50, 61 P.3d 176. For prescriptive easements generally, a showing of actual use of the area within the alleged easement is required. *See Maloney v. Wreyford*, 1990-NMCA-124, ¶ 13, 111 N.M. 221, 804 P.2d 412 (reasoning "the prescriptive right encompasses only the portion of the servient estate actually used"). Public highways, and some amount of land around the roadways, may be established "by prescription" via the common law. *See Hall v. Lea County Elec. Coop*, 1968-NMSC-040, ¶ 10, 78 N.M. 792, 438 P.2d 632.

{23}   The determination of what area of land denotes the extent of the "highway established by prescription" is a factual question that considers whether the land is

continuously used by or open to use by the public. *See* § 67-2-5; *Hall*, 1968-NMSC-040, ¶ 10 (acknowledging a private party's concession that "a public highway established by prescription is not, as a matter of law, restricted in width to the track of actual travel, but includes the travelled track and whatever lands as are necessarily used and incidental thereto for highway purposes"); *cf. Maloney*, 1990-NMCA-124, ¶ 13 (reasoning "the prescriptive right encompasses only the portion of the servient estate actually used"). NMDOT does not contest the absence of a written or express easement as to the disputed Property and relies exclusively on a prescriptive easement theory. R&R provided, in its reply to NMDOT's response to the summary judgment motion, the Sterling affidavit stating there is "no evidence that the Property has been used for safety clear zones, maintenance area zones, or shoulders." Hence, the dispositive question becomes whether NMDOT presented any specific evidentiary facts that the State or the public has used the disputed area beyond the curb for highway purposes or whether the disputed area was open for use by the public. *See Lopes*, 2014-NMCA-097, ¶ 6 ("The movant need only make a prima facie showing that [they are] entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." (internal quotation marks and citation omitted)).

**{24}** To demonstrate the existence of specific evidentiary facts requiring a trial on the merits, "[a] party may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint." *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 15, 296 P.3d 478 (alteration, internal quotation marks, and citations omitted). "[U]nsupported arguments . . . are not evidence upon which a trial court can rely in a summary judgment proceeding." *Vigil v. Taintor*, 2020-NMCA-037, ¶ 19, 472 P.3d 1220 (internal quotation marks and citation omitted).

**{25}** Smelker's affidavit, and the maps attached thereto, fall short of presenting admissible evidence tending to show actual use of the disputed area or that the disputed area was open for use by the public. *See Maloney*, 1990-NMCA-124, ¶ 13 (reasoning "the prescriptive right encompasses only the portion of the servient estate actually used"). The Smelker affidavit presents generalities as to NMDOT standards of practice and does not speak to specific evidentiary facts that the disputed area beyond the curbs has ever been used to store maintenance or construction equipment. Nor does the affiant speak to specific evidentiary facts that the public used the disputed area to pull off the roadway for safety reasons. Facts of these or similar activities would tend to show actual use of the disputed area. The maps provided merely indicate that NMDOT believes it has a right-of-way, apparently by

14

prescriptive easement, which goes beyond the curbs while providing no basis for that belief.

{26} NMDOT indicates that these "[r]ight[-]of[-w]ay maps show that the prescriptive easement encroaches on the property at issue, because the NMDOT is required to maintain 'clear zones' for public safety and maintenance." NMDOT justifies its belief that its highway right-of-way extends beyond the roadway by indicating this additional area is required to maintain "clear zones." However, this justification is betrayed by its own affiant, who, speaking generally, states that "a clear zone is an unobstructed, traversable roadside area that allows a driver to stop safely, or regain control of a vehicle that has left the roadway." The facts before the district court here showed that access to the Property at issue from the roadway is not unobstructed: it is obstructed by curbs. As spoken to above, the consideration of the viability of the "clear zone" logic aside, NMDOT provides no specific evidentiary facts that the Property has *actually* been used as a clear zone or for other public safety or maintenance purposes at any time. Even in a favorable light, NMDOT effectively establishes only that the disputed area could possibly be used in such a way based on NMDOT standards of practice and asserts that this possibility indicates the alleged rights-of-way demonstrated on the map are established by prescription.

{27} The creation of a highway right-of-way by an easement by prescription requires a showing of continuous use by the public or being open to use by the public. *See* § 67-2-5. Drawing from easement by prescription terminology outside of a highway context, "the portion of the servient estate actually used" may qualify under the statute to establish a highway right-of-way by prescription. *See Maloney*, 1990-NMCA-124, ¶ 13 (reasoning "the prescriptive right encompasses only the portion of the servient estate actually used"). The mere possibility of a hypothetical future use is therefore legally insufficient under a prescriptive easement theory for purposes of the State acquiring title by the statute. A map with dashed lines indicating an alleged right-of-way does not tend to show actual use for the purposes of establishing an easement by prescription. Thus, NMDOT presents an unsupported legal argument in place of admissible evidence that creates a disputed material fact.

{28} NMDOT relies on *City of Sunland Park*, 1999-NMCA-143, ¶ 15, and urges that it stands for the proposition that Section 67-2-5 grants equitable title to the state for roadways that satisfy the requirements of the statute. We agree with this characterization of *City of Sunland Park*. However, as described above, the title of the roadway and the surrounding roadway indicators (the shoulders, curbs, and inlets) are not at issue in this case. The dispute revolves around the area of land between the curb of the roadway and the buildings. Accordingly, *City of Sunland Park* is not informative here and does not dispose of NMDOT's burden to present

admissible evidence of actual use to the district court in order to proceed to trial on a theory of an easement by prescription.

{29}     For these reasons, we hold that the district court did not err in concluding that there were no material facts in dispute and as a matter of law no prescriptive easement extended into the Property.

## II.     The District Court Did Not Err in Taking Judicial Notice of the Quiet Title Action

{30}     NMDOT contends that the district court committed reversible error at trial when it concluded that the quiet title action determined the rights of the parties in this matter. NMDOT reasons that it had no opportunity to litigate the issue of property rights relating to the Property in the prior case so it's inappropriate for the district court to determine NMDOT's rights based on that suit here. R&R responds that it was not a viable option for R&R to bring a quiet title claim against the state there, that it never claimed that the quiet title action implicated the State's rights to the Property here, and that the district court did not find as much here. We agree with R&R's characterization of the matter. The district court did not determine the rights of NMDOT based upon the quiet title action, only the rights of those that were party to the action to the extent that was appropriate at the time of the action. Therefore, there is no basis for this Court to reverse on this ground.

### III. The District Court Did Not Err in Regard to the Slander of Title and Intentional Interference With Contractual Relations Claims

{31} NMDOT claims the district court committed reversible error by not precluding the slander of title and intentional interference with contractual relations claims. NMDOT emphasizes that the state is immune to slander of title tort claims, pursuant to NMSA 1978, Section 41-4-4 (2001) of the Tort Claims Act, and has not waived immunity. Further, NMDOT highlights that "inverse condemnation provides the exclusive remedy for the property owner if the condemnor takes or damages property without paying just compensation or without initiating proceedings to condemn." *North v. Pub. Serv. Co. of N.M.*, 1983-NMCA-124, ¶ 10, 101 N.M. 222, 680 P.2d 603. R&R responds that the district court did not draw the legal conclusion that the State is liable for slandering R&R's title here, nor did the district court draw the legal conclusion that the State is liable for intentionally interfering with R&R's contractual relations. R&R claims it presented facts relating to slander of title and interference with contractual relations for the district court to be able to determine whether NMDOT's actions amounted to an interference with R&R's property rights such to constitute inverse condemnation.

{32} We are satisfied that, in effect, R&R proceeded only on an inverse condemnation theory. On the morning of trial, R&R agreed that slander of title and interference with contractual relations could not be brought against the State and asserted that it was "prepared to go forward on an inverse condemnation theory

18

supported by the tortious interference with contractual relations and supported by the slander of title" in characterizing inverse condemnation as "the main claim." As a result, the district court was not asked to rule on those former independent claims and did not find the State liable for slander of title or intentional interference with contractual relations in its findings of fact and conclusions of law. Accordingly, the district court's ruling was not in error and was not inconsistent with the sovereign immunity or common law principles that NMDOT raises.

**CONCLUSION**

{33}    For the foregoing reasons, we affirm.

{34}    **IT IS SO ORDERED.**


_____

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**JANE B. YOHALEM, Judge**